## INTERNATIONAL HARVESTER COMPANY OF AMERICA v. COMMONWEALTH OF KENTUCKY.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 297.   Argued April 24, 1914.—Decided June 22, 1914.

It is essential to the rendition of a personal judgment against a corporation that it be doing business within the State; but each case must depend upon its own facts to show that this essential requirement of jurisdiction exists.

The presence of a corporation within a State necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the State, although the business may be entirely interstate in its character.

The fact that the business carried on by a corporation is entirely interstate in its character does not render the corporation immune from the ordinary process of the courts of the State.

147 Kentucky, 655, affirmed.

THE facts, which involve the validity and sufficiency of service of process upon a foreign corporation and the determination of whether such corporation was doing business within the State, are stated in the opinion.

*Mr. Alexander Pope Humphrey* and *Mr. Edgar A. Bancroft*, with whom *Mr. Victor A. Remy* was on the brief, for plaintiff in error in this case and in No. 298.[1]

For cases involving questions of service of process upon foreign corporations as controlled by the Constitution of the United States, see Ky. Stats., § 571 (1909); *Commonwealth* v. *Hogan & Co.*, 25 Ky. L. R. 41; *Commonwealth* v. *Eclipse Hay Press Co.*, 31 Ky. L. R. 824; *Three States*

---

[1] See p. 590, *post.*

*Buggy Co.* v. *Commonwealth,* 32 Ky. L. R. 385; *Goldey* v. *Morning News,* 156 U. S. 518; *Conley* v. *Mathieson,* 190 U. S. 406; *Caledonian Co.* v. *Baker,* 196 U. S. 432; *Remington* v. *Cent. Pac. R. Co.,* 198 U. S. 95; *Kendall* v. *Am. Loom Co.,* 198 U. S. 477; *Peterson* v. *C., R. I. & P. Ry. Co.,* 205 U. S. 364; *Green* v. *C., B. & Q. R. R. Co.,* 205 U. S. 530; *Mechanical Appliance Co.* v. *Castleman,* 215 U. S. 437; *Saxony Mills* v. *Wagner,* 94 Mississippi, 233; *Fawkes* v. *Am. Motor Co.,* 176 Fed. Rep. 1010.

At the time of the attempted service the defendant was doing nothing but an interstate commerce business with the people of Kentucky. *Commonwealth* v. *Chattanooga Co.,* 126 Kentucky, 636; *Brennan* v. *Titusville,* 153 U. S. 289; *Caldwell* v. *North Carolina,* 187 U. S. 621.

The carrying on of interstate commerce by the defendant with persons residing in this State does not constitute a doing of business in Kentucky. Cases *supra,* and *Havens* v. *Diamond,* 93 Ill. App. 557.

Merely soliciting orders is not doing business in a State. Cases *supra,* and *Green* v. *C., B. & Q. Ry. Co.,* 205 U. S. 530; *North Wisconsin Cattle Co.* v. *Oregon Short Line,* 105 Minnesota, 198; *Earle* v. *Ches. & Ohio Ry. Co.,* 127 Fed. Rep. 235, 240; *Fairbank* v. *Cincinnati &c. Ry. Co.,* 54 Fed. Rep. 420, 423; *Grace* v. *Martin Brick Co.,* 174 Fed. Rep. 131, 132; Kentucky Civil Code of Practice, § 51, subd. 3 and 6.

To hold that defendant can be prosecuted in these cases would violate the commerce clause of the Constitution. *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 27; *Hadley-Dean Co.* v. *Highland Glass Co.,* 143 Fed. Rep. 242, 244; *Albertype Co.* v. *Gust-Feist Co.,* 102 Texas, 219; *Eclipse Paint Co.* v. *New Process Roofing Co.,* 55 Tex. Civ. App. 553; *Moroney Co.* v. *Goodwin Pottery Co.* (Tex. Civ. App.), 120 S. W. Rep. 1088, 1091.

The fact that the Harvester Company formerly carried on business in Kentucky does not alter the situation.

*Conley* v. *Mathieson Alkali Works*, 190 U. S. 406; *International Textbook Co.* v. *Pigg*, 217 U. S. 91; *St. Louis S. W. Ry.* v. *Alexander*, 227 U. S. 226.

Under the construction given the Kentucky Process Statute by the Court of Appeals a person or corporation doing exclusively an interstate commerce business must submit to the jurisdiction of Kentucky courts.

The submission to the state courts, which is requisite to render foreign corporations subject to suit, cannot be compelled or implied where such corporation does only an interstate commerce business.

The cases relied upon by the Commonwealth do not support its contentions.

*Mr. Charles Carroll*, with whom *Mr. James Garnett*, Attorney General of the State of Kentucky, *Mr. Frank E. Daugherty, Mr. J. R. Mallory, Mr. J. C. Dedman, Mr. C. R. Hill* and *Mr. C. D. Florence* were on the brief, for defendant in error in this case and in No. 298: [1]

Plaintiff in error cannot raise the question in this court that the proceedings against it in these cases were a denial to it of due process of law. Section 157, Crim. Code, Kentucky; *Commonwealth* v. *Cheek*, 1 Duval, 26; *Commonwealth* v. *Neat*, 89 Kentucky, 242; *Payne* v. *Commonwealth*, 16 Ky. L. R. 839; *Sharp* v. *Commonwealth*, 16 Ky. L. R. 840; *York* v. *Texas*, 137 U. S. 15–20; *Cosmopolitan Mining Co.* v. *Walsh*, 193 U. S. 469.

The process in this case was served upon the proper person and the judgment rendered thereon was valid and binding. *St. Louis S. W. R. R. Co.* v. *Alexander*, 227 U. S. 227.

As to effect of the instructions to agents from the plaintiff in error, see *Good Roads Co.* v. *Commonwealth*, 146 Kentucky, 690; *Boyd Commission Co.* v. *Coates*, 24 Ky. L. R. 730; *Nelson Morris* v. *Rehkopf*, 25 Ky. L. R. 352; *Green v.*

---

[1] See p. 590, *post.*

*Chicago &c. R. R. Co.*, 205 U. S. 530; *Denver &c. R. R. Co.* v. *Roller*, 100 Fed. Rep. 938; *International Textbook Co.* v. *Pigg*, 217 U. S. 91; *Delamater* v. *South Dakota*, 125 U. S. 93; 19 Cyc. 1347–1348.

To hold that plaintiff in error was properly served with process and the judgment rendered against it valid will not violate the commerce clause of the Constitution. *International Harvester Co.* v. *Commonwealth*, 147 Kentucky, 657.

MR. JUSTICE DAY delivered the opinion of the court.

This case presents the question of the sufficiency of the service of process on an alleged agent of the International Harvester Company in a criminal proceeding in Breckenridge County, Kentucky, in the court of which county an indictment had been returned against the Harvester Company for alleged violation of the anti-trust laws of the State of Kentucky. The Harvester Company appeared and moved to quash the return, substantially upon the ground that service had not been made upon an authorized agent of the company and that the company was not doing business within the State of Kentucky, and it set up that any action under the attempted service would violate the due process and commerce clauses of the Federal Constitution. The only question involved, says the Court of Appeals, and we find none other in the record, is whether there was such service of process as would sustain the judgment. The court overruled the motion, and, the case being called for trial and the Harvester Company failing to appear or plead, judgment by default for $500 penalty was entered against it, which was affirmed by the Court of Appeals of Kentucky (147 Kentucky, 655).

It appeared that prior to October 28, 1911, before this indictment was returned, the Harvester Company had

been doing business in Kentucky and had designated Louisville, Kentucky, as its principal place of business, in compliance with the statutes of Kentucky in that respect. It further appeared that the Company had revoked the agency of one who had been appointed under the Kentucky statute and had not appointed anyone else upon whom process might be served.

It is conceded in the brief of the learned counsel for the plaintiff in error that whether the person upon whom process was served was one designated by the law of Kentucky as an agent to receive summons on behalf of the Harvester Company was a question within the province of the Court of Appeals of Kentucky to finally determine, and no review of that decision is asked here. We come then to the first question in this case, which is, Whether under the circumstances shown in this case the Harvester Company was carrying on business in the State of Kentucky in such manner as to justify the courts of that State in taking jurisdiction of complaints against it.

For some purposes a corporation is deemed to be a resident of the State of its creation, but when a corporation of one State goes into another in order to be regarded as within the latter it must be there by its agents authorized to transact its business in that State. The mere presence of an agent upon personal affairs does not carry the corporation into the Foreign state. It has been frequently held by this court, and it can no longer be doubted that it is essential to the rendition of a personal judgment that the corporation be "doing business" within the State. *St. Louis S. W. Ry.* v. *Alexander*, 227 U. S. 218, 226, and cases there cited. As was said in that case, each case must depend upon its own facts, and their consideration must show that this essential requirement of jurisdiction has been complied with and that the corporation is actually doing business within the State.

In the case now. under consideration the Court of Ap-

peals·of Kentucky found, with warrant for the conclusion, that the Harvester Company's method of conducting business might be shown to the best advantage from the general instruction of the company to its agents of date November 7, 1911, as follows:

"The Company's transactions hereafter with the people of Kentucky must be on a strictly interstate commerce basis. Travelers negotiating sales must not hereafter have any headquarters or place of business in that State, but may reside there.

"Their authority must be limited to taking orders, and all orders must be taken subject to the approval of the general agent outside of the State, and all goods must be shipped from outside of the State after the orders have been approved. Travelers do not have authority to make a contract of any kind in the State of Kentucky. They merely take orders to be submitted to the general agent. If any one in Kentucky owes the Company a debt, they may receive the money, or a check, or a draft for the same but they do not have any authority to make any allowance or compromise any disputed claims. When a matter cannot be settled by payment of the amount due, the matter must be submitted to the general or collection agent, as the case may be, for adjustment, and he can give the order as to what allowance or what compromise may be accepted. All contracts of sale must be made f. o. b. from some point outside of Kentucky and the goods become the property of the purchaser when they are delivered to the carrier outside of the State. Notes for the purchase price may be taken and they may be made payable at any bank in Kentucky. All contracts of any and every kind made with the people of Kentucky must be made outside of that State, and they will be contracts governed by the laws of the various States in which we have general agencies handling interstate business with the people of Kentucky. For example, contracts

made by the general agent at Parkersburg, W. Va., will be West Virginia contracts.

"If any one of the Company's general agents deviates from what is stated in this letter, the result will be just the same as if all of them had done so. Anything that is done that places the Company in the position where it can be held as having done business in Kentucky, will not only make the man transacting the business liable to a fine of from one hundred to one thousand dollars for each offense, but it will make the Company liable for doing business in the State without complying with the requirements of the laws of the State. We will, therefore, depend upon you to see that these instructions are strictly carried out."

Taking this as the method of carrying on the affairs of the Harvester Company in Kentucky, does it show a doing of business within that State to the extent which will authorize the service of process upon its agents thus engaged?

Upon this question the case is a close one, but upon the whole we agree with the conclusion reached by the Court of Appeals, that the Harvester Company was engaged in carrying on business in Kentucky. We place no stress upon the fact that the Harvester Company had previously been engaged in doing business in Kentucky and had withdrawn from that State for reasons of its own. Its motives cannot affect the legal questions here involved. In order to hold it responsible under the process of the state court it must appear that it was carrying on business within the State at the time of the attempted service. As we have said, we think it was. Here was a continuous course of business in the solicitation of orders which were sent to another State and in response to which the machines of the Harvester Company were delivered within the State of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders

in Kentucky, but might there receive payment in money, checks or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the State in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the State.

It is argued that this conclusion is in direct conflict with the case of *Green* v. *Chicago, Burlington & Quincy Ry.*, 205 U. S. 530. We have no desire to depart from that decision, which, however, was an extreme case. There the Railway Company, carrying on no business in Pennsylvania, other than that hereinafter mentioned, and having its organization and tracks in another State, was sought to be held liable in the Circuit Court of the United States for the Eastern District of Pennsylvania by service upon one Heller, who was described as an agent of the corporation. As incidental and collateral to its business proper the Company solicited freight and passenger traffic in other parts of the country than those through which its tracks ran. For that purpose it employed Heller, who had an office in Philadelphia, where he was known as district freight and passenger agent, to procure passengers and freight to be transported over the Company's line. He had clerks and travelling passenger and freight agents who reported to him. He sold no tickets and received no payment for the transportation of freight, but took the money of those desiring to purchase tickets and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order which gave the holder the right to receive from the Company in Chicago a ticket over its road. Occasionally he sold to railroad employés, who already had tickets over intermediate lines, orders for reduced rates over the Company's line.

In some cases for the convenience of shippers who had received bills of lading from the initial line for goods routed over the Company's line, he exchanged bills of lading over its line, which were not in force until the freight had been actually received by the Company. Summarizing these facts, Mr. Justice Moody, speaking for the court, said (p. 533): "The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it."

In the case now under consideration there was something more than mere solicitation. In response to the orders received, there was a continuous course of shipment of machines into Kentucky. There was authority to receive payment in money, check or draft, and to take notes payable at banks in Kentucky.

It is further contended that as enforced by the decision of the Kentucky court the law, in its relation to interstate commerce, operates to burden that commerce. It is argued that a corporation engaged in purely interstate commerce within a State cannot be required to submit to regulations such as designating an agent upon whom process may be served as a condition of doing such business, and that as such requirement cannot be made the ordinary agents of the corporation, although doing interstate business within the State, cannot by its laws be made amenable to judicial process within the State. The contention comes to this, so long as a foreign corporation engages in interstate commerce only it is immune from the service of process under the laws of the State in which it is carrying on such business. This is indeed, as was said by the Court of Appeals of Kentucky, a novel proposition, and we are unable to

find a decision to support it, nor has one been called to our attention.

True, it has been held time and again that a State cannot burden interstate commerce or pass laws which amount to the regulation of such commerce; but this is a long way from holding that the ordinary process of the courts may not reach corporations carrying on business within the State which is wholly of an interstate commerce character. Such corporations are within the State, receiving the protection of its laws, and may, and often do, have large properties located within the State. In *Davis* v. *Cleveland, C., C. & St. L. Ry.,* 217 U. S. 157, this court held that cars engaged in interstate commerce and credits due for interstate transportation are not immune from seizure under the laws of the State regulating garnishment and attachment because of their connection with interstate commerce, and it was recognized that the States may pass laws enforcing the rights of citizens which affect interstate commerce but fall short of regulating such commerce in the sense in which the Constitution gives sole jurisdiction to Congress, citing *Sherlock* v. *Alling,* 93 U. S. 99, 103; *Johnson* v. *Chicago & Pacific Elevator Co.,* 119 U. S. 388; *Kidd* v. *Pearson,* 128 U. S. 1, 23; *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477; and *The Winnebago,* 205 U. S. 354, 362, in which this court sustained a lien under the laws of Michigan on a vessel designed to be used in both foreign and domestic trade.

In *International Textbook Co.* v. *Pigg,* 217 U. S. 91, it was held that a law of Kansas which required the filing by a foreign corporation engaged in interstate commerce of a statement of its financial condition as a prerequisite of the right to do such business and which required a certificate from the Secretary of State showing that such statements had been filed as a condition precedent to the right of the corporation to maintain a suit in that State, was void. But that case did not hold, as we should be

required to do to sustain the contention of the plaintiff in error in this case, that the fact that the corporation was carrying on interstate commerce business through duly authorized agents made it exempt from suit within the State by service upon such agents.

We are satisfied that the presence of a corporation within a State necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the State, although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the State.

It follows that the judgment of the Court of Appeals of Kentucky must be

*Affirmed.*