VAN SCHUYVER CO. v. BREEDMAN.

(Third Division. Valdez. April 21, 1915.)

No. 709.

1. CORPORATIONS ☞661(2)—FOREIGN—PROCESS.

   The plaintiff, an Oregon corporation, brought this suit to collect $600 from defendant for goods sold to him in Alaska by one of plaintiff's traveling salesmen. The debt is not denied, but defendant sets up the defense that the plaintiff corporation is not authorized to maintain the action, because it has not complied with the provisions of chapter 23, §§ 654–660, Comp. Laws Alaska 1913, requiring foreign corporations, before doing business in Alaska, to file with the secretary of the territory and the clerk of the district court of the division in which it expects to do business a duly authenticated copy of its articles of incorporation, a statement of its financial condition, and a list of its officers, its written consent to be sued in the territory, and the name of an agent upon whom service may be made. The plaintiff does not claim to have complied with these requirements, but contends it is engaged in an interstate business in Alaska, not having a place of business therein, but selling goods through traveling salesmen only. Held, on the authority of International Harvester Co. v. Com. of Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479, that the plaintiff was engaged in doing business in Alaska without having complied with the said statute, and has no right to maintain this action. Complaint dismissed.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. TERRITORIES ⬤=11—FOREIGN CORPORATIONS—ACT OF CONGRESS.
    Congress has authority to require foreign corporations to
    file a copy of its articles of incorporation,. a statement of its
    condition, a list of its officers, its consent to be sued, and tne
    name of an agent upon whom service of process may be made,
    before doing business in Alaska.  Such legislation is constitu-
    tional and valid.

The plaintiff, a corporation organized under the laws of the
state of Oregon, brings this action to collect some $600 from
the defendant, for goods, wares, and merchandise sold de-
fendant by one of plaintiff's traveling salesmen in Alaska.  It
is admitted that the defendant received these goods and has
not paid for them, but he sets up the defense that the plain-
tiff corporation is not authorized to maintain this action, for
the reason that it has not complied with the laws of Alaska
(passed by the Congress of the United States) requiring for-
eign corporations doing business in Alaska to file with the
secretary of the district an authenticated copy of their ar-
ticles of incorporation, appointment of agent upon whom serv-
ice of process may be made, and also annual statements or
reports, setting forth the amount of its capital stock, amount
of its assets and liabilities, etc.  Act June 6, 1900, c. 786, 31
Stat. 528; Comp. Laws Alaska 1913, c. 23, p. 329.

Plaintiff alleges in its amended complaint that it "is not,
and during all the times herein mentioned was not, doing
business in the territory of Alaska, so as to bring it within the
provisions of chapter 23 of the Civil Code of Alaska," etc.

Donohoe & Dimond, of Valdez, for plaintiff.
R. E. Capers, of Cordova, for defendant.


BROWN, District Judge.  The plaintiff does not claim that
it has fully complied with said chapter 23, but contends that
it is engaged only in an interstate business in Alaska, not
having a place of business therein, but selling goods through
traveling salesmen or agents only.

Upon this question there are great numbers of conflicting
cases from the courts of all the states, and from the Supreme
Court of the United States.  The general settled doctrine may
be said to be that laws similar to those in said chapter 23
are held to be unconstitutional, as being a burden on interstate

⬤=See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

commerce or regulating such commerce, when applied to corporations carrying on business in states other than its home state, only through or by traveling salesmen or solicitors.

Without undertaking to review the conflicting authorities as to what constitutes "doing business" in such state, a very recent decision by the Supreme Court of the United States seems to be decisive on this question. In the case of International Harvester Company of America v. Commonwealth of Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479, an almost identical state of facts existed as in the case at bar. The Harvester Company issued the following instructions to its agents (which is taken by the court as being a fair statement of the facts):

"The company's transactions hereafter with the people of Kentucky must be on a strictly interstate commerce basis. Travelers negotiating sales must not hereafter have any headquarters or place of business in that state, but may reside there. Their authority must be limited to taking orders, and all orders must be taken subject to the approval of the general agent outside of the state, and all goods must be shipped from outside of the state, after the orders have been approved. Travelers do not have authority to make a contract of any kind in the state of Kentucky. They merely take orders to be submitted to the general agent. If any one in Kentucky owes the company a debt, they may receive the money, or a check, or a draft for the same, but they do not have any authority to make any allowance or compromise any disputed claims. When a matter cannot be settled by payment of the amount due, the matter must be submitted to the general collection agent, as the case may be, for adjustment, and he can give the order as to what allowance or what compromise may be accepted. All contracts of sale must be made f. o. b. from some point outside of Kentucky, and the goods become the property of the purchaser when they are delivered to the carrier outside of the state. Notes for the purchase price may be taken, and they may be made payable at any bank in Kentucky. All contracts of every and any kind made with the people of Kentucky must be made outside of that state, and they will be contracts governed by the laws of the various states in which we have general agencies handling interstate business with the people of Kentucky. For example, contracts made by the general agent at Parkersburg, W. Va., will be West Virginia contracts."

The court, through Mr. Justice Day, says:

"Taking this as the method of carrying on the affairs of the Harvester Company in Kentucky, does it show a doing of business within that state to the extent which will authorize the service of process upon its agents thus engaged?

"Upon this question the case is a close one, but upon the whole we agree with the conclusion, reached by the Court of Appeals, that the Harvester Company was engaged in carrying on business in Kentucky. We place no stress upon the fact that the Harvester Company had previously been engaged in doing business in Kentucky, and had withdrawn from that state for reasons of its own. Its motives cannot affect the legal questions here involved. In order to hold it responsible under the process of the state court, it must appear that it was carrying on business within the state at the time of the attempted service. As we have said, we think it was. Here was a continuous course of business in the solicitation of orders which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state."

The facts in the case at bar are practically identical with that in the case just quoted. The plaintiff, Van Schuyver Company, had traveling salesmen selling goods in Alaska. Many sales were made to defendant. The salesmen made collections in some instances and the company, as in the Harvester Case, claimed that a contract of sale was not consummated until its approval in Portland, Or.

It is true that this case arose over a question as to the amenability of the Harvester Company to process served upon it or one of its agents in the state of Kentucky, but on the question as to whether or not it was "doing business" within the state of Kentucky the case seems to me controlling. It may be said that the Harvester Company was "doing business" within the state of Kentucky in the sense only that it was thereby rendered amenable to service of process out of the courts of Kentucky, but it was not "doing business" within the meaning of the corporation laws requiring foreign corporations to file its articles of incorporation, reports, appointment of agent, etc., before it was authorized to do business, or to bring suit upon its contracts in such state. But if it was "doing business" for one purpose, it was doing business for all purposes that were lawful, and within the meaning of all laws that were valid and constitutional.

The only reason why laws similar to those in chapter 23 of the Civil Code of Alaska have been held unconstitutional when applied to foreign corporations doing business in another state only by traveling salesmen or solicitors is that such application of said laws imposed a burden on interstate commerce or attempted to regulate interstate commerce, which right or power is by the Constitution of the United States expressly reserved to the Congress of the United States.·

Counsel for the plaintiff has suggested that Congress, in legislating for Alaska, acts only as the local or state Legislature might for its state; but the fact remains that Congress has the power under the Constitution to legislate on this subject and having exclusive jurisdiction over the territories, as Alaska, it has legislated, and such legislation cannot be held unconstitutional.   On the whole, the effect of such legislation is beneficial, and corporations seeking the benefits of the trade and commerce of this territory are put to no great hardship in complying with the laws above mentioned.   The complaint will have to be dismissed.   Findings and judgment may be prepared accordingly.