## I. N. PRICE & CO. v. DAVIS, AGENT.

*Service of summons—Foreign corporations—Section 11290,
General Code—General agent is "managing agent" of rail-
road, when—"Doing business" in Ohio.*

Foreign railroad corporation, having office in state for solic-
iting traffic, *held* to carry on business, so as to subject it
to state courts, and its general agent was managing agent,
within Section 11290, General Code.

(Decided July 2, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Mr. H. Hightower,* for plaintiff in error.
*Messrs. Maxwell & Ramsey,* for defendant in
error.

HAMILTON, J. Plaintiff in error brought an ac-
tion in the municipal court of Cincinnati for dam-
ages to a shipment of fruit:

The bill of particulars charged that plaintiff, on
or about November 5, 1919, caused to be delivered
to the United States Railroad Administration, at
Yakima, Wash., a car containing 812 boxes of ap-
ples, for shipment to plaintiff at Cincinnati, Ohio;
that the Railroad Administration, then operating
the properties of the Northern Pacific Railway
Company, issued a bill of lading contract, covering
such shipment, wherein the Railroad Administra-
tion agreed to give the shipment what is known as
"carrier's protective service," under which, for the
payment of an increased rate, the carrier agreed
to protect the shipment from loss by freezing. The
bill of particulars then alleges that the fruit arrived
in Cincinnati in a damaged condition, the boxes

badly broken and mashed and bruised, and a portion of the fruit frozen, and claimed damages in the sum of $738.94.

Service of summons was caused to issue, and was served on the agent of the Northern Pacific Railway Company in charge of the office of that company in Cincinnati.

The defendant moved to quash the service of summons, and appeared for the purpose of the motion only, claiming the agent of the company was not such an agent as was contemplated by the statute, upon whom service could be made binding the company for its appearance in court to answer the suit.

The municipal court granted the motion, and quashed the service.

From that judgment, the plaintiff in error prosecuted error to the court of common pleas, which court affirmed the judgment of the municipal court in granting the motion. From that judgment of affirmance, the plaintiff prosecutes error to this court; seeking a reversal of the judgment of the two lower courts.

It is admitted that the Northern Pacific Railway Company is a foreign corporation, and has no trackage in the state of Ohio. Section 11290, General Code, provides:

"When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent."

The question for determination is, Was the service upon the agent within the terms of this statute? In other words, Was the agent one upon whom service could be made?

William C. Hartnett, the agent in charge of the Cincinnati office of the Northern Pacific Railway Company, and upon whom the service of summons was made, appeared at the hearing on the motion in the municipal court and was examined. It appears from the bill of exceptions, in the testimony of Hartnett, that he lives at 4115 Forest avenue, South Norwood; that at the time of the service of summons he was in charge of the offices of the Northern Pacific Railway Company located in Cincinnati, with the title of general agent; that his business card had a stamp in the corner with the words "Northern Pacific, Yellowstone Line, William C. Hartnett, Cincinnati, Ohio, General Agent, Northern Pacific Railway"; that the Cincinnati offices of the Northern Pacific Railway Company, of which Hartnett was in charge, were located at No. 1001 Neave Building, and that the company has maintained its offices at this point since the United States Railroad Administration relinquished its control over the railroads; that during federal control over the railroads the Northern Pacific had maintained an office in this city; that Hartnett's salary and the expenses of the operation of the office, and the salaries of other employes connected with the office, were paid by the Northern Pacific Railway Company; that the territory embraced under the jurisdiction of the Cincinnati office was nearly all of Ohio, all of Kentucky, Western West Virginia, all of Tennessee, Alabama, South Carolina, Georgia, Florida, and a strip of territory in North Carolina; that Hartnett, so far as the Cincinnati office was concerned was in sole and complete charge thereof in regard to traffic, and that

there was no one connected with the Cincinnati office in authority over Hartnett, unless specially assigned from the St. Paul office in matters not pertaining to traffic; that, in case of special assignments from the general offices of the corporation, such special assignments were in most instances under Hartnett's jurisdiction; that there were four employes under Hartnett, with the titles of traveling passenger agent, traveling freight agent, chief clerk, and soliciting freight agent, and also a stenographer; that all of these employes were paid by the Northern Pacific Railway Company, and operated from the Cincinnati office under Hartnett; that the said Hartnett, as general agent, and the employes under his jurisdiction, solicited both freight and passenger transportation for the Northern Pacific Railway Company in the territory mentioned, and Hartnett as general agent had full control of this trade solicitation; and that the purpose of maintaining the office was to get business for the company. It further appears from the bill of exceptions that some settlements of freight claims are mailed to this office in Cincinnati, and are turned over through this office to the claimants; that, while exceptions are made, it is the general procedure that vouchers in settlement of claims are sent to the office in Cincinnati; that the Northern Pacific Railway Company lists itself in the Cincinnati telephone directory, with the statement that Hartnett is the general agent; that, in reference to solicitation of passenger transportation, the office endeavored to find out the date of the departure of the traveler, the sleeping car accommodations he required, and what tickets he required; that Hart-

nett, as general agent, signs an I. O. U. to the Consolidated ticket office for the requirements; that the passenger thereupon calls at the office of the Northern Pacific Railway Company, receives the tickets, pays his money, which the office of the company turns over to the Consolidated ticket office, and lifts the I. O. U.; and that all payment of money the passenger makes is made to Hartnett, or the employes at the Cincinnati office. Under these facts there can be no question that Hartnett was the managing agent of whatever agency existed in Cincinnati.

The question of service, under similar circumstances, has often been before the courts, both federal and state. In all the cases it has been held that no all-embracing rule can be laid down on the question of service on a foreign corporation. Each case must be determined upon its own facts.

The point is, Is the corporation upon which service is sought present within the state in such manner as to subject it to a given jurisdiction? This point has been settled by the court by determining the proposition, What constitutes the doing of business by a foreign corporation sufficient to manifest its presence within the state?

It would serve no purpose to recite the facts of the different cases. It is sufficient to say that, while the facts in all instances are not altogether the same, under similar facts we find in *W. J. Armstrong Co.* v. *N. Y. C. & H. R. Rd. Co.,* 129 Minn., 104, 151 N. W., 917, Ann. Cas., 1916E, 335, and *Rishmiller* v. *Denver & R. G. Rd. Co.,* 134 Minn., 261, 159 N. W., 272, the service was held good, although these cases were in a measure controlled by

state statute. In the case of *Green* v. *Chicago, B. & Q. Ry. Co.,* 205 U. S., 530, 27 S. Ct., 595, 51 L. Ed., 916, under similar circumstances, service was set aside. In *St. Louis Southwestern Ry. Co.* v. *Alexander,* 227 U. S., 218, 33 S. Ct., 245, 57 L. Ed., 486, Ann. Cas., 1915B, 77, on the facts shown, service was held good. In *International Harvester Co.* v. *Kentucky,* 234 U. S., 579, 34 S. Ct., 944, 58 L. Ed., 1479, under the facts shown, the service was held good. In the case of *Philadelphia & Reading Ry. Co.* v. *McKibbin,* 243 U. S., 264, 37 S. Ct., 280, 61 L. Ed., 710, on similar facts, a service was set aside. In *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y., 259, 115 N. E., 915, and *Pomeroy* v. *Hocking Valley Ry. Co.,* 218 N. Y., 530, 113 N. E., 504, under similar facts, service was held good. In the case of *Mauser* v. *Union Pacific Ry. Co.* (D. C.), 243 F., 274, where the circumstances were very similar to the facts in the case at bar, the service was held good. Also in the cases of *Denver & R. G. Rd. Co.* v. *Roller* (C. C. A.), 100 F., 738, and *Tuchband* v. *Chicago & Alton Ry. Co.,* 115 N. Y., 437, 22 N. E., 360, the service was held good.

It is clear from this review of the decisions that each case must be determined from its own facts.

In the case under consideration we find the general agent in charge of the offices of the Northern Pacific Railway Company, through himself, and his employes, procuring business for the company; we find the company contracting for the carriage of perishable goods, with a through bill of lading to Cincinnati, the residence of the consignee, receiving extra compensation for protection to the shipment; we find the goods arriving in Cincinnati dam-

aged, in violation of the contract. And yet the company now seeks to escape the jurisdiction of the court under the claim that it is not doing business in the state. The fact that the business carried on by a corporation is entirely interstate in character cannot affect the case. It was so held in *International Harvester Co.* v. *Kentucky,* 234 U. S., 579, 34 S. Ct., 944, 58 L. Ed., 1479.

It has been held and fully settled that the absence of trackage is not the test. If what is done through the office of the company in Cincinnati does not constitute the doing of business in a sense such as to manifest the presence of the company within the state, we are unable to understand what the term "doing business" means. It certainly cannot be tested by the volume of the business transacted. It is whether or not the company is transacting business that indicates its presence.

Under the facts of the case, we are of opinion that the company was present in the state, carrying on business in such a manner as to subject it to the jurisdiction of the courts of the state, that Hartnett, the general agent, was, within the meaning of the statute, the managing agent, and that the service was good.

The judgment of the court of common pleas and of the municipal court will be reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed.*

CUSHING and BUCHWALTER, JJ., concur.