## CARNEGIE OFFICE APPLIANCE CO. v. THOMAS A. EDISON, Inc.

District Court, M. D. North Carolina, Greensboro Division. October 11, 1928.

No. 92.

Brooks, Parker, Smith & Wharton, of Greensboro, N. C., for plaintiff.

King, Sapp & King, of Greensboro, N. C., for defendant.

HAYES, District Judge. This action at law was commenced in the superior court of Guilford county, North Carolina, by the Carnegie Office Appliance Company, a North Carolina corporation, with its principal office and place of business at Greensboro, Guilford county, North Carolina, against Thomas A. Edison, Inc., a New Jersey corporation, to recover damages on account of an alleged breach of contract on the part of the defendant in discontinuing the plaintiff as sole distributor of the defendant's Ediphone products in the states of North and South Carolina. The defendant procured the removal of the case to the Middle District of North Carolina, on the ground of diversity of citizenship, and here entered a special appearance and made a motion to vacate the service of process and to dismiss the action, for that the defendant is a foreign corporation and is not engaged in doing business in North Carolina, and for that the person upon whom the process was served was not an officer or agent of the company upon whom service could be obtained legally.

At the hearing, it was agreed that the motion might be heard upon the affidavits filed in the cause, including the complaint. From the affidavits and the complaint, it sufficiently appears that Thomas A. Edison, Inc., is a New Jersey corporation, engaged in manufacturing and selling various products, and particularly "Ediphones"; that it sells its Ediphones to a distributor, who is granted exclusive agency rights in a defined territory. The distributor obtains orders from his customers, sometimes with the assistance of representatives sent to assist him by the defendant, and the defendant ships its merchandise to the distributor, or plaintiff, f. o. b. West Orange, N. J., and the plaintiff herein sells the product for his own account.

The plaintiff was given exclusive representation of the sales of defendant's Ediphones in the states of North and South Carolina, and had acted in this capacity for a number of years. During the year 1927 the defendant requested the plaintiff to cease to use its name, and requested the plaintiff further to use the name and style of "The Ediphone Company." In order to facilitate the sale and distribution of the products manufactured by the defendant, plaintiff accordingly made the change. Practically all the correspondence and all dealings by the plaintiff with the defendant has been conducted through and by Mr. Verne M. Coolidge, an employee of Thomas A. Edison, Inc. In such correspondence, Mr. Coolidge signed his name as "Manager, Ediphone Extension." During the years plaintiff thus represented the defendant, Mr. Coolidge frequently visited the plaintiff and conferred with Mr. Carnegie, who is the principal stockholder and manager of the Carnegie Office Appliance Company. On June 26, 1928, Mr. Coolidge went to Norfolk, Va., and conferred with Mr. Carnegie, and advised him that the defendant would not continue the plaintiff as distributor for Ediphone products for North and South Carolina, and proposed to assume the liability on the outstanding leases of the plaintiff company and to take off of the plaintiff's hands the stock of merchandise and accessories at the actual invoice prices. This proposition the plaintiff, of course, objected to, and, pursuant to an agreement between them, Mr. Coolidge and Mr. Carnegie came to Greensboro, N. C., to continue the negotiations, and in order that plaintiff might confer with his counsel.

After conferring with counsel, Mr. Carnegie informed Mr. Coolidge that his counsel advised him not to surrender the territory, whereupon Mr. Coolidge requested him to consult his counsel again, and by agreement the matter was held in abeyance until July 2, 1928. In the meantime, Mr. Coolidge is alleged to have arranged to deliver the territory over to Mr. G. E. Johnson, in the event the plaintiff released it. Mr. Coolidge's intentions were apparently to take over the merchandise and pay for it, and deliver the same to Mr. Johnson, in the event an agreement could be reached with the plaintiff whereby the business was to be carried on in the name of the Ediphone Company, although Mr. Johnson was to have charge of it.

Being unable to reach an agreement, the plaintiff prepared a complaint, and had summons and complaint served on Mr. Coolidge on July 2, 1928.

Mr. Coolidge is not an officer or stockholder of Thomas A. Edison, Inc., and is not a person on whom process could be served in New Jersey. The Ediphone division of Thomas A. Edison, Inc., was under the management of Nelson C. Durand, vice president of Thomas A. Edison, Inc. The ordinary and usual duties of Mr. Coolidge are to attend to the matter of filling orders, attend to correspondence with distributors, and assist Mr. Durand in such matters as he may be called upon to render assistance, subject to the supervision and direction of Mr. Durand. Acting under the instructions and directions of Mr. Durand, Mr. Coolidge notified Mr. Carnegie that Thomas A. Edison, Inc., would not continue the Carnegie Office Appliance Company as distributor of Ediphone products for North and South Carolina.

Thomas A. Edison, Inc., is not and has never been domesticated in North Carolina, or registered to do business therein, and has no property in the state. Mr. Coolidge is a citizen of the state of New Jersey. Thomas A. Edison, Inc., sells its Ediphone machines to distributors in various parts of the United States through the solicitation of orders from such distributors, which orders are subject to acceptance only at the office of Thomas A. Edison, Inc., West Orange, N. J. The goods manufactured to fill such orders are shipped from West Orange, N. J., and said distributors sell such goods for their own accounts. The orders are handled by Mr. Verne M. Coolidge for the corporation.

■■ It is well settled by the decisions of the Supreme Court that, in order to obtain legal service on a foreign corporation, such corporation must be present in the state, engaged in doing business therein, and the process must be served upon a proper agent of the corporation. As Mr. Coolidge filled orders received from the distributors of the defendant's products and attended to the correspondence, signing his name as "Manager, Ediphone Extension," and was in North Carolina clothed with the authority to dispense with the services of the plaintiff as the sole distributor of the defendant's products in North and South Carolina, to take over the merchandise of the plaintiff and pay for it at cost, and to select a distributor to carry on the business of the defendant, it would seem perfectly

clear that he was such an agent of the corporation as would most assuredly bring notice to it if a process was served on him. He was in Guilford county, North Carolina, transacting this identical business, at the time process was served on him for an alleged breach of the defendant's contract with the plaintiff.

■■ Was Thomas A. Edison, Inc., doing business in the state of North Carolina? Each case must be decided upon its peculiar facts, as no well-defined rule has been announced by which it may be determined what constitutes the doing of business by a foreign corporation in such manner as to subject it to the jurisdiction of the court, in which process is served. The broad principle is announced that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the District in which it is served.

In International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, it is said: "We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the state."

In St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77, the facts were that a freight agent of the defendant considered the plaintiff's claim and a settlement of the claim was attempted. After the negotiations had failed a suit was brought. Justice Day says: "Here, then, was an authorized agent attending to this and presumably other matters of a kindred character, undertaking to act for and represent the company, negotiating for it and in its behalf declining to adjust the claim made against it. In this situation we think this was the transaction of business in behalf of the company by its authorized agent in such manner as to bring it within the district of New York, in which it was sued, and to make it subject to the service of process there."

■ When the defendant came into this state through its duly authorized agent and discharged its sole distributor of its Ediphone products in the states of North Carolina and South Carolina, offered to buy the

products remaining in the hands of plaintiff, and designated a new distributor for the same territory and presumably intended to sell him these products, was the defendant in the state at that time doing business? In other words, is it necessary, in order to constitute doing business, that it must be protracted, or so inclusive as to embrace all of defendant's undertakings? In Dungan, Hood & Co., Inc., v. C. F. Bally, Ltd. (D. C.) 271 F. 517, the facts are almost identical with the facts in this case. The court there held that the defendant was doing business in the state of Pennsylvania, so as to bring it under the jurisdiction of the court.

I am of the opinion that the defendant in this case was present in North Carolina, transacting business, when the process was served on its agent, and the motion herein is therefore overruled.