BROWN v. SHIELDS & CO., Inc., et al. (two cases.)

Nos. 3099, 3584.

District Court, D. Massachusetts.

May 22, 1930.

In case No. 3099:

Hale & Dorr and D. Burstein, all of Boston, Mass., for plaintiff.

Warren, Garfield, Whiteside & Lamson, Richard M. Russell, and Edward C. Mack, Jr., all of Boston, Mass., for defendant Shields & Co.

In case No. 3584:

Hale & Dorr, of Boston, Mass., for plaintiff.

Edward C. Mack, Jr., Warren, Garfield, Whiteside & Lamson, and Richard M. Russell, all of Boston, Mass., for defendant.

MORTON, District Judge.

There are two pleas in abatement in each case, the first denying jurisdiction under the service of the original writ issued by the state court, the other, under the special precept issued by this court. The facts are settled by stipulations, and for present purposes are the same in each case.

Service of the original writ was made by the Suffolk sheriff under date of February 11, 1929. His return shows a trustee attachment on the Federal Reserve Bank of Boston, and recites that he summoned the defendant "By delivering to T. I. Canney, Esq. its agent and the * * * in charge of its business, an attested copy of this writ." The special precept of this court issued under date of October 10, 1929; the marshal's return shows that it was served on October 15, 1929, by making a nominal attachment and summoning the defendant "by giving in hand to Charles Pelham Nelson, manager and in charge of its business at Boston in said District a true and attested copy of the within special precept."

Shields & Co., Inc., was engaged in the banking and brokerage business in New York City. In February, 1929, when the writ was issued and served, it had a Boston office of which Canney was in charge, his authority to represent the defendant being restricted to the solicitation of orders which were forwarded to the principal office in New York. During October, 1929, when the special precept was served, the defendant had an office in Boston, and a sales force of whom Nelson was one and apparently in charge, working under the same restricted authority. The present claim arose before the establishment by the defendant of a Boston office; it is based on alleged fraudulent misrepresentations concerning securities sold by the defendant or its predecessor.

The Massachusetts statute (G. L. c. 223, § 38), provides that foreign corporations which solicit business here are amenable to suit in the Massachusetts courts, and that service upon such corporations, "shall be made upon the clerk, cashier, secretary, agent or other officer in charge of its business." Id. § 37. Similar statutes are in force in many other states. It is settled that they are unconstitutional, in so far as they impose unreasonable restrictions on interstate commerce, or undertake to subject to personal judgments foreign corporations not so present or represented in the state as to bring them within its jurisdiction. Thurman v. Chicago, Milwaukee & St. Paul Ry. Co., 254 Mass. 569, 151 N. E. 63, 46 A. L. R. 563; Green v. Chicago, B. & Q. Ry. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; International Harvester Company v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479.

The controlling decision in this circuit is Frink Company v. Erikson (C. C. A.) 20 F.(2d) 707, in which it was said that the soliciting agent's authority "to represent the defendant for the purpose of service of process, should be confined to suits involving the ordinary commercial transaction and other matters of a kindred character concerning which it may fairly be said to represent the Frink Company, Inc." Morris, J., at page 711. This bases jurisdiction on an imputation of authority in the agent to represent the principal in receiving service of process—a very clarifying suggestion, differentiating cases arising out of the solicited business, from those not directly related thereto in which jurisdiction rests on corporate presence. While the states undoubtedly have a certain latitude in prescribing what activities shall be deemed to constitute corporate presence within their borders, there are limits upon their powers in this respect, and it is ultimately a federal question. In Maverick Mills v. Davis, Director General, 294 F. 404 (D. C. Mass.) cited with approval in Frink Company v. Erikson, supra, it was held that the soliciting agent of a foreign corporation which regularly engages in the solicitation of business in this state by agents resident here is authorized to receive service of process on behalf of the corporation with respect to matters arising out of the business so solicited.

It is plainly reasonable for a state to provide that foreign corporations which enter its borders to solicit business there with its residents shall be held to have done so on the understanding that they shall be sub-

544

ject to suit in its courts with respect to the transactions so entered into. But the constitutional limitations, above referred to, restrict this imputation of authority, and it cannot, I think, be held to include suits with respect to transactions entered into before the corporation came into the state to solicit business. There is a wide distinction between the authority of an agent to represent a principal in current transactions, and authority to do so, with respect to transactions which have long been completed, and in which the agent took no part. I therefore reach the conclusion that the service of process did not establish jurisdiction of the defendant.

█ I am, however, of opinion that the defendant's action in giving bonds to dissolve the trustee attachments was an acceptance of the jurisdiction. Massachusetts statutes (G. L. c. 227, entitled "Proceedings against Absent Defendants and upon Insufficient Service"), provide a rather elaborate and complete scheme of procedure against nonresident or absent defendants who own property here. The essence of it is that a nonresident defendant whose property has been attached may either (1) abandon the property, in which case jurisdiction sufficient to give judgment against it is secured by publication, or by service outside the state, which would be insufficient to support a personal judgment; or (2) he may appear specially to defend his property without submitting himself generally to the jurisdiction. The defendant here took neither of these courses. Instead, it gave bonds to dissolve the attachments and appeared specially denying jurisdiction. The bonds contain explicit statements that they were given without admitting the jurisdiction of the court over the person or the property of the defendant, and expressly reserving the defendant's rights in connection therewith.

The plaintiff contends that the reservation was ineffective. On similar facts except that the bond did not contain any reservation, it was held in Britton v. Goodman, 235 Mass. 471, 126 N. E. 767, that it amounted to a general appearance. The present question is whether the form of the bond avoids that decision. In my opinion it does not. As was there said "The defendants might have taken the latter course [i. e. appeared specially to protect the attached property] but having obtained and enjoyed the benefits conferred by the bond voluntarily made, and delivered, and which could not have been availed of without recognizing the attach-

ment and submitting themselves to the jurisdiction of the court from which the writ issued, their *acts* [italics mine] should be held as having the effect of a general appearance." Braley J. page 475 of 235 Mass., 126 N. E. 767, 769, citing authorities. So here it is a question not of what the defendants said but of what they did; of their acts, not their words. To hold otherwise would be in effect to nullify the whole scheme of the statute. A nonresident defendant could get back his attached property by giving a bond to pay any judgment which might be entered against him, and could then evade any judgment by objecting that he was not amenable to the jurisdiction. It is essentially a question of Massachusetts law; and the cases in other states, relied on by the defendant, do not apply.

Pleas in abatement adjudged bad.