## No. 14,256.

JUNIOR FROCKS, INC. *v.* DISTRICT COURT OF THE CITY AND COUNTY OF DENVER, ET AL.
(94 P. [2d] 694)

Decided September 18, 1939.

Messrs. BLOUNT & SILVERSTEIN, Mr. G. DEXTER BLOUNT, Mr. HARRY S. SILVERSTEIN, JR., for petitioner.

Mr. CURTIS WHITE, for respondents.

*En Banc.*

MR. JUSTICE FRANCIS E. BOUCK delivered the opinion of the court.

ON petition of Junior Frocks, Inc., a corporation of the state of Missouri, for a writ of prohibition, we entered an order directed to respondents, the district court of the City and County of Denver and Honorable Joseph J. Walsh, as judge thereof, to show cause why the writ should not issue as prayed. The petition was grounded on the allegation that said district court erroneously and unlawfully overruled a motion to quash a certain summons by which it was sought to acquire jurisdiction over the petitioner corporation in an action pending before the tribunal mentioned. The plaintiff in that action is Ford Veazey, who named as defendants the aforesaid petitioner Junior Frocks, Inc., together with

T. G. Agnew, H. Hyman & Co., and Irving Frocks.

Veazey's action was brought in the district court against the petitioner corporation and its codefendants to recover damages for injuries alleged to have been sustained by him on November 16, 1935, in a collision between his automobile and one driven by the defendant Agnew.

The summons by which jurisdiction is claimed over the petitioner corporation as above stated was served upon the defendant Agnew on the assumption that he was an agent of petitioner and that the petitioner was legally subject to service of process in this state.

The affidavits presented to the district court in support of the motion to quash establish, and the counter-affidavits in no way throw doubt upon, the facts that the automobile driven by Agnew belonged to him personally and that the petitioner corporation neither owned any interest in it nor operated or in any way controlled it or attempted to interfere with or direct the operation, or even suggested the use, or the manner of the use, of it, or required Agnew to provide any motor transportation, and that the petitioner paid no part of the expense of maintaining, repairing or operating the automobile; so that the relation of principal and agent could not have existed in the running of the automobile or rendered the petitioner responsible for the collision.

These facts, and the further facts hereinafter recited, in and of themselves tend to negative any liability on the part of the petitioner in connection with the above mentioned collision. However, the issue before us now by virtue of the present original proceeding is the particular question whether, under the facts already stated and the facts about to be stated, the petitioner as a foreign corporation is legally amenable to service of process in Colorado.

In addition to the facts heretofore stated, it further appears, from the affidavits supplied as aforesaid in sup-

port of the motion to quash the summons in the district court as to the petitioner, that Agnew was an independent, itinerant solicitor of sales, in the states of Wyoming, Colorado, Utah, Idaho, Montana, Oregon and Washington, of merchandise manufactured by the petitioner corporation and by other manufacturers; that he had no established place of business, but traveled from one city or town to another in the states mentioned; that he solicited orders from merchants for such merchandise with the aid of samples; that, in carrying on his business with the petitioner, Agnew merely obtained orders which were sent by him through the mail to the petitioner's place of business in St. Louis, Missouri; that the petitioner accepted or rejected the orders and assumed all credit responsibility in reference to those accepted; that it paid Agnew as his sole compensation a commission of seven and one-half per cent of the purchase price of the merchandise shipped on accepted orders. Furthermore, it appears that in connection with this solicitation of orders Agnew paid all his own expenses, including as aforesaid all those of transportation; that the petitioner corporation maintained no office within the state of Colorado; that Agnew obviously decided for himself when, where, in what manner, and even whether, he would solicit orders; that goods sold to Colorado purchasers on accepted orders were shipped to them from outside Colorado. As above stated, Agnew personally owned and at his own expense operated an automobile in which the petitioner corporation had no interest at all and which Agnew could use or not, as he chose. There was, as already stated, no requirement by the petitioner that Agnew provide motor transportation; in fact he traveled at his own discretion, sometimes in his own automobile, sometimes by railroad, sometimes by other conveyances, throughout the states mentioned, always at his own expense. It is also shown that Agnew had no authority to accept any orders so as to make the proposed contract of sale complete, and

that he had no duty as to determining the credit standing of those whose orders he took, and had nothing to do with procuring security for, or collecting, the purchase price of any order, and was not responsible for, or authorized to accept, the payment thereof.

From the foregoing description it is obvious that the business derived by the petitioner from Agnew's efforts was purely interstate business. Of course, interstate business which consists of or results from the mere solicitation of orders from prospective purchasers cannot lawfully be interfered with by a state. Citations are unnecessary.

We must, on the other hand, concede that a foreign corporation engaged in interstate business can nevertheless in some cases be subjected to the state jurisdiction. The important question is, What is the foreign corporation doing besides the mere doing of interstate business? The real test has been worked out by the Supreme Court of the United States and other courts after considerable difficulty and not a little confusion.

The correct principles have been established in several cases. In *People's Tobacco Co. v. American Tobacco Co.*, 246 U. S. 79, 86, 38 Sup. Ct. 233, 62 L. Ed. 587, Mr. Justice Day, speaking for the court, says:

"The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court * * *. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted. *Philadelphia & Reading Ry. Co. v. McKibbin*, 243 U. S. 264; *St. Louis Southwestern Ry. Co. v. Alexander*, 227 U. S. 218, 226.

"The fact that the company owned stock in the local subsidiary companies did not bring it into the state in the sense of transacting its own business there. [Citing cases] As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that state, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it. *Green v. Chicago, Burlington & Quincy Ry. Co.*, 205 U. S. 530; *Philadelphia & Reading Ry. Co. v. McKibbin*, 243 U. S. 264, 268.

"The plaintiff in error relies upon *International Harvester Co. v. Kentucky*, 234 U. S. 579, but in that case the facts disclosed that there was not only a continuous course of business in the solicitation of orders within the state, but there was also authority upon the part of such agents to receive payment in money, checks and drafts on behalf of the company, and to take notes payable and collectible at banks in Kentucky; these things, taken together, we held amounted to doing business within the state of Kentucky in such manner as to make the Harvester Company amenable to the process of the courts of that state."

 . Neither in any case which has been brought to our attention by the parties nor in any case which we have encountered in our independent investigation of the law has such a situation as the record shows in the case at bar, without more, resulted in sustaining the right to serve process upon the foreign corporation involved.

The writ of prohibition will therefore issue as prayed by the petitioner.

Writ issued.

Mr. Chief Justice Hilliard, Mr. Justice Otto Bock and Mr. Justice Burke not participating.