**Richard C. SIKES, Plaintiff,**

v.

**REXALL DRUG COMPANY, a Delaware corporation, Defendant.**

**Civ. A. No. 625.**

United States District Court
W. D. Virginia,
Abingdon Division.
Aug. 11, 1959.

Asbury & Robertson and Kiser, Vicars & Kiser, Wise, Va., for plaintiff.

W. T. Bowen, of Greear, Bowen, Mullins & Winston, Norton, Va., for defendant.

THOMPSON, Chief Judge.

This action was commenced by the plaintiff in the Circuit Court of Wise County, Virginia by serving process upon the Clerk of the State Corporation Commission, in accordance with § 8–60 and § 13.1–111 Va.Code Ann. (1950). It was removed to this court and is now before the court on the defendant's motion to quash the service of process and dismiss for lack of jurisdiction or for failure to state a claim whereupon relief may be granted.

### Findings of Fact

The facts, as shown by the pleadings, depositions, and exhibits are as follows: The plaintiff is a citizen and resident of Wise County, Virginia, where he operates the Wise Store, a sole proprietorship. The defendant is a Delaware corporation with its principal place of business in Los Angeles, California, and is engaged in the sale of various patent remedies, nostrums, novelties, and the like.

In August 1952, the parties to this action signed a document prepared by the defendant and denominated by it as a "Franchise Agreement." The plaintiff was not then operating and has not since operated the Wise Store as a registered pharmacy as required by Section 13 of the Franchise Agreement, and the defendant has been aware of this failure since the inception of the agreement. The plaintiff ordered and received various items from the defendant from 1952–56; the plaintiff's gross annual purchases never reached the minimum of $2,800 required in Section 9 of the Franchise Agreement. The maximum annual purchases made by plaintiff from defendant during this period was $1,521 in 1954. While the agreement was in effect, the defendant's salesmen called upon

the plaintiff and solicited orders from him which were accepted and filled by the defendant. These salesmen also instructed the plaintiff on the use of advertising media supplied by the defendant, and on methods of displaying the defendant's products to the best advantage. The plaintiff participated in Rexall "1¢ Sales" and shared certain advertising costs incurred thereby. Also, in accordance with defendant's policy, "push money," or a sales commission bonus, was paid by Rexall to salespeople who sold certain specified Rexall products.

During the time this relationship existed between the parties, Rexall had no office and no telephone listing in Virginia; it kept no merchandise in Virginia; all orders were filled outside Virginia and shipped to the purchasing "Rexallites." Although defendant had several salesmen passing through Virginia soliciting orders from plaintiff and other Rexallites, these salesmen had no offices in Virginia; they delivered no goods and made no collections. These salesmen had no authority to do more than these acts.

On June 27, 1956, the defendant cancelled the Franchise Agreement and notified the plaintiff of its action.

### Conclusions of Law

■ Diversity of citizenship between plaintiff and defendant exists, and the amount in controversy exceeds the minimal jurisdictional limitation. Thus, the first question presented is whether or not the service had upon the Clerk of the State Corporation Commission under the Virginia statutes set out above was adequate to bring the defendant under the jurisdiction of this court by operation of Fed.R.Civ.P. 4(d) (7), 28 U.S.C.A. In order for the defendant to be amenable to this service of process under the cited statute, it must have been "doing business" in Virginia.

■■ The phrase "doing business" is ephemeral and not easily defined. Each case, perforce, must turn upon its own particular facts; International Har-

vester Co. of America v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 583, 34 S.Ct. 944, 58 L.Ed. 1479; see Philadelphia & Reading Ry. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L. Ed. 710. The general rule is that in order to be "doing business" and thus subject to statutory service such as that here attempted, a corporation must maintain more than a mere soliciting agent within a state. International Harvester Co. of America v. Commonwealth of Kentucky, supra, 234 U.S. at pages 585–586, 34 S.Ct. at page 945; Eastern Livestock Co-Op Marketing Ass'n v. Dickenson, 4 Cir., 1939, 107 F.2d 116, 118. The difficulty is in determining how much more is required.

■ The facts here presented show solicitations of orders from the plaintiff and other "Rexallites" throughout Virginia. There were also sharing of advertising costs and certain sales arrangements (e. g., 1¢ sales, "push money"). However, the only activity of the soliciting agents other than soliciting orders was assisting the Rexallites in the use of advertising media and the display of products and the payment of the "push money." This is hardly enough to meet the "solicitation plus" test indicated in International Harvester Co. of America v. Commonwealth of Kentucky, supra. Carnegie v. Art Metal Const. Co., 1950, 191 Va. 136, 60 S.E.2d 17, 22. The question here presented was exhaustively considered by the court in Rock-Ola Manufacturing Corporation v. Wertz, 4 Cir., 1957, 249 F.2d 813. It would serve no purpose to compare the facts of those cases with the facts of the case here involved. Suffice it to say that the activities of the Rexall Company in this case are insufficient to make it amenable to the statutory service of process by virtue of "doing business" in Virginia. Therefore, the defendant's motion to quash the process will be granted, and this case will be dismissed for want of jurisdiction.

An order will be entered accordingly.