## McCARTHY SHEEP CO. v. S. SILBERMAN & SONS.

(District Court, D. Wyoming. May 28, 1923.)

No. 1285.

**1. Corporations ⧯668(15)—Foreign corporation, buying wool, etc., in state through agents, held to be "carrying on business" therein.**

A corporation of another state, served with process and which through a series of years, as a partnership and later as a corporation, had been extensively engaged in buying wool in Wyoming during each shearing season, through agents authorized to make contracts, receive and ship the wool, and make advance payments thereon by drafts on the company, *held* to be "carrying on business" in the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Carry on Business.]

**2. Corporations ⧯668(5)—Service on director and vice president of foreign corporation, with general charge of business, etc., held good.**

Service of process on one who was a director and vice president of a foreign corporation doing business in Wyoming, who had general charge over the business in a particular locality, with larger authority as a representative of the company than an ordinary agent, *held* a good service on the corporation, under Comp. St. Wyo. 1920, § 5633, providing for service on the managing agent in the state of a foreign corporation, where the corporation had not complied with the requirements of the statute to authorize it to do business in the state, nor designated an agent for service therein.

At Law. Action by the McCarthy Sheep Company against S. Silberman & Sons, a corporation. On motion by defendant to set aside summons and quash service. Denied.

G. R. Hagens, of Casper, Wyo., for plaintiff.

C. L. Rigdon, of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge (in memorandum). The above-entitled cause is before the court at the present time upon motion to set aside the summons and quash the service. The ground of the motion is that the defendant corporation is organized under the laws of the state of Illinois, where it carries on its business; that it carries on no business within the state of Wyoming, and that it has no agent clothed with authority to represent it in the state of Wyoming upon whom such service could legally be made.

The facts in the cause, for the purposes of the motion, may be gathered from the allegations of the petition, answers to written interrogatories attached to the petition, which are on file in the cause, the return of the officer making the service, an affidavit of one of the officers of the defendant company filed in support of the motion, and the oral evidence of said officer taken at the hearing upon the motion under consideration.

The cause of action appears to have grown out of an alleged contract for the purchase of wool in the city of Casper, Wyo., by an alleged agent of the defendant company. The contract set up in the petition bears date May 11, 1920, and the service of the summons in

question is alleged to have been made on the 31st day of May, 1920, by the sheriff of Natrona county, Wyo. (said cause having originated in the state court and having been removed here), upon one David B. Silberman, who was at the time present at Casper in said state, and being a member of the board of directors of the defendant company, as well as its vice president.

[1] So far the facts do not seem to be greatly in dispute, but the instant controversy arises over the question as to whether or not the defendant company at the time was engaged in carrying on business within the state of Wyoming, and whether or not the party upon whom the summons was served comes within the classification of such an agent of the defendant company as would make the service in question a valid one. The court has endeavored to draw from the different classes of evidence above referred to a basis which may be considered as the facts in the case for the purposes of a ruling upon the motion.

It appears that prior to the year 1919 the defendant was operating as a copartnership under the same name, having become incorporated under the laws of the state of Illinois during that year. The business of purchasing wool within the state of Wyoming had continued for a period of about 20 years, first as a copartnership and then as a corporation, without any extended intermittent period. During the year 1920, when the controversy in this suit arose, the defendant company had purchased 4,000,000 or 5,000,000 pounds of wool within the state, and it seems that the inference may further be drawn from the evidence that this had been a fairly representative average volume of the company's yearly business covering a period of years. It was the custom of the company to send agents into the state at approximately the beginning of the shearing season, to remain for a sufficient length of time to conduct the operations of the company in the purchase of such wool. The authority of the agents of the company generally was to negotiate the purchase of wool clips from growers and, if satisfactory terms were agreed upon, to enter into contracts in the name of the company with the growers, said contracts being generally executed upon the stock blanks in the name of the company by and through such agent. The agent, if advance payment were made, would make a draft upon the defendant company at Chicago, and cause the wool to be delivered at one of the shipping points in Wyoming, and then ship it to the defendant company in Chicago. This method as to the execution of the contract and issuance of draft was pursued in the case at bar. The purchasing agent, however, was not the David B. Silberman upon whom the service was made.

David B. Silberman testified upon the stand that, although he was a member of the board of directors and vice president of the defendant corporation, his engagements in the state of Wyoming were those of an agent of the company acting under orders of the general manager, the president, in the purchase of wool only. His testimony, however, did tend to support the theory, first, that his territory for the purchase of wool was Natrona county and the country tributary

290 F.—33

thereto, with Casper as headquarters, at the times he was engaged as purchasing agent for the defendant company; and, second, that if any questions or controversies arose over company affairs in that locality while he was in the state, the matters growing out of such questions or controversies would be referred to him as an agent and representative of the company, with more authority than that of an ordinary agent in that locality.

With these facts only generally outlined, it seems to be incumbent upon the court to determine, first, whether or not the defendant company was carrying on business in the state of Wyoming; and, second, whether or not the agent upon whom the service was made, was such an agent as that in law the service made upon him would bind the company. The statutes of the state of Wyoming provide, as most state statutes do, for the manner in which foreign corporations may become domesticated and how such foreign corporations may designate an agent in the state upon whom service of process may be made. Our statute also provides penalties for failure to comply with such provisions. I take it, however, that these particular statutes are not of consequence in pursuing the question here under consideration, although it is admitted that no action was ever taken by the defendant corporation to comply with the state statutes, either in respect to becoming authorized to do business in the state or in respect to designating an agent. Section 5631 of the Compiled Statutes of Wyoming of 1920 provides the manner in which a summons in a suit against a corporation may be served, and section 5633 reads:

"When the defendant is a foreign corporation having a managing agent in this state, the service may be upon such agent."

In the case of United States v. American Bell Telephone Co. (C. C.) 29 Fed. 17, strongly relied upon by counsel for defendant, the court has laid down the general rule, stated in the syllabus, in the following language:

"In the absence of a voluntary appearance, three conditions must concur or coexist in order to give the federal courts jurisdiction in personam over a corporation created without the territorial limits of the state in which the court is held, viz.: (1) It must appear, as a matter of fact, that the corporation is carrying on its business in such foreign state or district; (2) that such business is transacted or managed by some agent or officer appointed by and representing the corporation in such state; and (3) the existence of some local law making such corporation, or foreign corporations generally, amenable to suit there as a condition express or implied of doing business in the state."

A somewhat elaborate review by Judge Booth of the cases, with facts similar to the case at bar, is found in the case of Stephan v. Union Pacific Railway Co. (D. C.) 275 Fed. 709. Some of the cases there discussed involve the question as to whether or not a foreign corporation, upon whom service was attempted to be made outside the state of its creation, was engaged in interstate commerce or otherwise, which question is not present in the case at bar. However, and in any event, this is not a controlling feature, as will be found from the reading of the International Harvester Case, hereinafter referred to.

In the case of Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, at page 610, 19 Sup. Ct. 308 at page 311 (43 L. Ed. 569), the court discusses the general proposition in the following language:

"In a suit where no property of a corporation is within the state, and the judgment sought is a personal one, it is a material inquiry to ascertain whether the foreign corporation is engaged in doing business within the state. Goldey v. Morning News, 156 U. S. 519; Merchants' Manufacturing Co. v. Grand Trunk Railway Co., 13 Fed. Rep. 358. And, if so, the service of process must be upon some agent so far representing the corporation in the state that he may properly be held in law an agent to receive such process in behalf of the corporation. An express authority to receive process is not always necessary."

The two cases which appear to this court to come nearer in point of facts to the case at bar are Green v. Railway Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, and International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479, in the first the service being held insufficient and in the second the service being sustained, showing that the point involved is one of the "border line" cases depending largely, if not entirely, upon the individual facts in the case. In fact, in the case of International Harvester Co. v. Kentucky, supra, the court in the opinion say:

"It is argued that this conclusion is in direct conflict with the case of Green v. Chicago, Burlington & Quincy Ry., 205 U. S. 530. We have no desire to depart from that decision, which, however, was an extreme case."

The Green Case was that of a railway company having its organization and tracks in another state being sought to be held liable in the state of Pennsylvania by service upon an agent whose business and duty it was to solicit freight and passenger traffic in states outside those in which its tracks ran. This agent sold no tickets and received no payment for the transportation of freight, except that he sometimes took money for the purchase of tickets in Pennsylvania on other roads in that state connecting with his own road, and issued orders for transportation on his own road, as well as other acts generally within the same class. In that case the Supreme Court held that the business shown was "in substance nothing more than that of solicitation."

In the case of International Harvester Co. v. Kentucky, supra, the court, after discussing the facts, say:

"Here was a continuous course of business in the solicitation of orders which were sent to another state and in response to which the machines of the harvester company were delivered within the state of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there in such wise that the harvester company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state."

The question in the mind of this court is as to which of these two cases the case at bar more nearly resembles, and I am inclined to the

belief that this case, while not on all fours in point of facts with the International Harvester Case, more nearly resembles that case, so as to bring it within the rule there laid down. Here the agents were solicitors, it is true, but in addition they had the power and authority to enter into contracts for the purchase of wool, giving in payment therefor at the time drafts upon the defendant company for the payment or partial payment of the purchase, and to receive and ship such purchased product out of the state to their principal.

This seems little different in effect from that portion of the recited facts in the International Harvester Case relied upon by the court in its decision, which were that, upon solicitation of orders and in response thereto, machines were received and delivered within the state where the orders were taken. In practical effect the purchasing of wool clips on a fluctuating market would seem to vest even greater authority, through discrimination and judgment in the agent, than in handling machinery on a fixed scale of prices. The contract itself here is made and executed by the company within the state by the authority of one who is capable of binding it. Considering the magnitude of the business of the peculiar character done by the company through its agents in the manner outlined, it is difficult for the court to see how it can be logically held that such a company, under the ruling in the Harvester Case, is not carrying on its business within the state of Wyoming. The fact that this business does not extend over the entire year seems to be of little consequence as an element in the case, for the reason that, while the business is there to be transacted, the company is consistently and continuously there to receive its proper share.

[2] As to whether the agent upon whom this particular service was made is such an agent within whose scope of authority such service would be binding upon the company, this court will hold that he was such an agent. From the evidence it appears that he was the agent in charge of the territory in which the controversy arose, and therefore was, in the sense that the business of the company was there being transacted, a "managing agent." In addition is the persuasive element in this case that the person served was not only a member of the board of directors of the defendant corporation, but the vice president and next in importance to the chief officer of the corporation. Surely such a service should be sufficient to bring the matter of the institution of a suit directly to the attention of the corporation. That such was the result is shown by the record, in that an attachment in the suit was released by bond being substituted in lieu of the attachment made by the sheriff upon wool which had previously been purchased by defendant in the state.

The three elements, therefore, necessary to sustain the service laid down in United States v. American Bell Telephone Co., supra, seemed to have been present in this case. The defendant corporation was carrying on business within the state, such business was transacted or managed by an agent representing the corporation in the state, and the laws of the state of Wyoming authorize a service to be made upon such an agent of a foreign corporation.

For the reasons stated, the motion to set aside the service will be denied, reserving to defendant its proper exceptions, and the defendant may have 30 days to answer or otherwise plead.