**MINTY v. DRAPER & CO., Inc.**

**No. 2107.**

District Court, D. Wyoming.

March 30, 1932.

Durham & Bacheller, of Casper, Wyo., for plaintiff.

Marion A. Kline, of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge.

The above-entitled cause is before the court by special appearance of the defendant upon motion to quash and set aside the service of summons and the sheriff's return upon the ground that there was no service in the cause of a character to give the court jurisdiction.

The action was instituted in the district court of the Eighth judicial district in and for the county of Natrona, state of Wyoming, on the 15th day of April, 1931. The suit is based upon an alleged contract of employment of the plaintiff by the defendant to purchase wool in the state of Wyoming upon certain designated terms and conditions which it is alleged was carried out by the plaintiff and not complied with by the defendant. Upon the ground of diversity of citizenship, the defendant being a foreign corporation, the cause was removed to this court, and within an appropriate time the defendant appeared specially by its counsel, and filed the aforesaid motion objecting to the jurisdiction of this court over the person of the defendant.

The motion has been presented partially upon oral testimony and partially upon affidavits and depositions in accordance with the agreement of counsel. From the evidence so presented and the record itself, a situation is developed substantially as follows: The defendant is a corporation organized under the laws of the commonwealth

of Massachusetts of which Paul Draper, residing in Massachusetts, is the president. In April, 1931, he was solicited by the Wyoming Co-operative Marketing Association, a Wyoming corporation, to come to Wyoming and meet with the wool growers of said state for the purpose of talking over the wool situation and explaining to such wool growers the advantages of marketing their product through the marketing association; that, in response to such solicitation, Draper came to Wyoming, and while in the city of Casper in said state on or about April 15, 1931, the summons in the case at bar was served upon him. The return on such summons by the sheriff specified that the summons was served "by delivering to Paul A. Draper, Pres. & Agent for service of Draper & Co. Inc. a true and correct certified copy of the same." It does not affirmatively appear from any of the testimony in the case that Draper was at any time engaged in carrying on any business of the defendant company in the state, unless it be considered that his appearance before the wool growers in the interests of the Wyoming Association was in its nature carrying on business for the defendant company within the state. In fact, so far as the evidence shows, the visit of Draper in April, 1931, was the first and only visit he ever made to Wyoming. Other evidence introduced by way of affidavit on behalf of plaintiff tends to show that one Kissick, one Hannan, and one Bennett, representing themselves as being employed by the defendant company, solicited business for the defendant company at various times during the year 1931, and that Bennett while in Wyoming during said year, purchased a car for which he paid, and likewise took out insurance upon the same, the payments for which were made by said Bennett making drafts upon the defendant company. Other evidence tends to show that the car in question was registered and a state license therefor issued to Bennett. Evidence of an officer of the Wyoming Wool Co-operative Marketing Association is to the effect that both Bennett and Kissick were furnished by the National Wool Marketing Association to the Wyoming Association as experts to appraise wool crops. It further appears that in one instance the sum of $1,000 was advanced to the plaintiff as a drawing account by the defendant for and in behalf of the Wyoming Association, which amount was later repaid by such association to the defendant company. There is also evidence to the effect that in the year 1930 the defendant company entered into a contract with the Wyoming Association to become an agent of the National Wool Marketing Corporation, and thereupon ceased to do business on its own account in the purchase of wools. It further appears from the records of the secretary of state that the defendant company never domesticated in the state of Wyoming in accordance with the laws relating to foreign corporations, nor did it at any time appoint an agent in said state upon whom process might be served.

The statutes of the state relating to service upon foreign corporations are found in Wyoming Revised Statutes 1931.

Chapter 28, section 108, provides: "Every incorporated company, incorporated under the laws of any foreign state or kingdom, or of any state or territory of the United States beyond the limits of this state, excepting insurance companies, shall file with the secretary of state a certificate signed by its president or secretary, designating the location (by town or city, giving street and number if any there be) of its principal office in this state, and the name of the agent in charge thereof, and upon whom process against said corporation may be served; and such office shall be deemed the office and postoffice address of such corporation, its officers, directors and stockholders, and whenever by the provisions of any law of this state any notice is required to be given to the corporation, its officers, stockholders or directors, such notice shall be sent by mail, or otherwise as the law may require, to such registered office and such notice so given shall be and be deemed sufficient notice; any process made at such registered place of business and upon such designated agent, shall be and be deemed sufficient service upon such corporation."

Chapter 28, section 113, provides: "That whenever any foreign corporation transacts business in this state without first accepting the constitution of this state as required by the provisions of § 28-141, and without having first complied with the provisions of § 28-108, and pursuant thereto appointed a process agent, said foreign corporation so transacting business in this state without complying with the laws of this state relative to domestication herein, shall be deemed to have designated the secretary of state as its true and lawful agent upon whom may be served all lawful process in any action or proceedings against said foreign corporation growing out of the transaction of any business in this state. Such service of process shall be made by leaving a copy of

the process, with a fee of two dollars, in the hands of the secretary of state or in his office, and such service shall be deemed sufficient service upon said foreign corporation provided that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff to the defendant foreign corporation, and the defendant's return receipt and the plaintiff's affidavit of compliance herewith are filed in said cause and submitted to the court from which said process issued, or said service of said process may be made by delivery to said corporation of a copy thereof outside the state, and proof of such delivery may be made by the affidavit of the person delivering the same, which affidavit shall be filed in said cause and be submitted to the court from which said process issued. The court in which the action is pending may order such continuances as may be necessary to afford the defendant foreign corporation reasonable opportunity to defend the action."

Chapter 89, section 814, provides: "When the defendant is a foreign corporation having a managing agent in this state, the service may be upon such agent."

This being a suit at law instituted in the state courts, the manner of service of process upon a foreign corporation must be as therein provided. These provisions seem to be ample in their nature to afford opportunity for service in any case in which such service or process is justified and should be sustained. If a foreign corporation has domesticated and appointed an agent, service of process may be had upon such agent, and, in the event this statute has not been complied with, if a foreign corporation is carrying on business in the state, service may be made upon the secretary of state or upon the managing agent in the state for such business.

In the case at bar, the record affirmatively shows that, while the serving official stated in his return that the service was made upon Draper as the agent for service of the defendant company, this return is not true in fact because the defendant company had never filed a certificate designating the principal office or the name of an agent upon whom process might be served in the state, and service upon the secretary of state was not attempted. The evidence is insufficient to justify the conclusion that Draper was in any sense the managing agent of any business of the defendant company within the state of Wyoming; and this is true even though it appear that he was at the time the president of the company, for it is not shown that he ever transacted any real business for the company in Wyoming. Even the consideration of plaintiff's testimony leads to the conclusion that either Kissick or Bennett, if any one, was such agent of the company within the contemplation of the statute. If they were acting independently so as not to be regarded as superior one to the other in classification, the service upon one who was conducting a business for the defendant company in the state of Wyoming would undoubtedly be a sufficient service, as he would in effect be a managing agent of the class and kind of business which he himself was conducting. In this view of the situation we feel that, even under plaintiff's theory, the service upon Draper was not in compliance with the statute, and cannot be sustained.

In addition, however, the research leads to an attempt to determine whether or not under the facts submitted the defendant company was doing business within the state of Wyoming in such a sense as to justify the conclusion that any legal service might have been secured at the time indicated. There is no evidence in the record which indicates that there was a single contract made for the purchase of wool on behalf of the defendant company, or a pound purchased by it for more than a year prior to the time that the service of the process was attempted. The evidence for the plaintiff, if accepted in the light most favorable to him, discloses that the so-called representatives of the defendant company stated that they were attempting to solicit business for the defendant company, and their activities apparently ended in such solicitation. In the first place, the defendant as a principal cannot be bound by the statements or admissions of the agent; in the second place, and probably more important, it is well established that the mere solicitation of business will not suffice to bring one within the term of "doing business" so as to establish a liability to service by process. In Green v. Chicago, Burlington & Quincy R. Co., 205 U. S. 530, at page 533, 27 S. Ct. 595, 596, 51 L. Ed. 916, the court says: "The business shown in this case was, in substance, nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it. This view accords with several decisions in the lower Federal courts.

Maxwell v. Atchison, etc., Railroad (C. C.) 34 F. 286; Fairbank & Co. v. Cincinnati, etc., Railroad, 54 F. 420, 4 C. C. A. 403 [38 L. R. A. 271]; Union Associated Press v. Times-Star Co. [C. C.] 84 F. 419; Earle v. Chesapeake, etc., Railroad [C. C.] 127 F. 235."

In Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U. S. 516, on pages 517, 518, 43 S. Ct. 170, 171, 67 L. Ed. 372, a case somewhat analogous in facts to the case at bar, the court has discussed the point in the following language: "The sole question for decision is whether, at the time of the service of process, defendant was doing business within the state of New York in such manner and to such extent as to warrant the inference that it was present there. Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 265, 37 S. Ct. 280, 61 L. Ed. 710. The District Court found that it was not. That decision was clearly correct. The Curtis Brown Company is a small retail dealer in men's clothing and furnishings at Tulsa, Okl. It never applied, under the foreign corporation laws, for a license to do business in New York; nor did it at any time authorize suit to be brought against it there. It never had an established place of business in New York; nor did it, without having such established place, regularly carry on business there. It had no property in New York, and had no officer, agent, or stockholder resident there. Its only connection with New York appears to have been the purchase there from time to time of a large part of the merchandise to be sold at its store in Tulsa. The purchases were made, sometimes by correspondence, sometimes through visits to New York of one of its officers. Whether, at the time its president was served with process, he was in New York on business or for pleasure, whether he was then authorized to transact any business there, and to what extent he did transact business while there, are questions on which much evidence was introduced, and some of it is conflicting. But the issues so raised are not of legal significance. The only business alleged to have been transacted by the company in New York, either then or theretofore, related to such purchases of goods by officers of a foreign corporation. Visits on

such business, even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of the state. Compare International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537. And as it was not found there, the fact that the alleged cause of action arose in New York is immaterial. Compare Chipman, Limited, v. Thomas B. Jeffery Co., 251 U. S. 373, 379, 40 S. Ct. 172, 64 L. Ed. 314."

The case in this district, McCarthy Sheep Co. v. S. Silberman & Sons (D. C.) 290 F. 512, is referred to in the briefs of counsel. It is manifest that the facts in the cited case are not similar, nor are the authorities there used persuasive in applying the proper rule in this case. The first portion of the syllabus of the Wyoming case sufficiently indicates the distinction: "A corporation of another state, served with process and which through a series of years, as a partnership and later as a corporation, had been extensively engaged in buying wool in Wyoming during each shearing season, through agents authorized to make contracts, receive and ship the wool, and make advance payments thereon by drafts on the company, held to be 'carrying on business' in the state."

It is suggested that the plaintiff would be submitted to some degree of hardship if he were relegated to prosecuting his suit in the jurisdiction where the defendant is domiciled, but, of course, this circumstance cannot be considered in determining the rights of the parties as they appear from the record before the court; but, in addition, so far as the record here shows, the plaintiff may be as well able to prosecute his suit in the courts of Massachusetts as the defendant is to defend the suit in the courts of Wyoming.

For the reasons stated, the motion to quash and set aside the service will be sustained, and an order may be entered accordingly and dismissing the cause at plaintiff's costs, reserving to him proper exceptions in the premises.