35 So.2d 169

**Ex parte MILNER et al.**

**6 Div. 660.**

Supreme Court of Alabama.

March 25, 1948.

Rehearing Denied May 13, 1948.

512

Wilkinson & Skinner, of Birmingham, for petitioners.

Jerome A. Cooper and Ben A. Engel, both of Birmingham, for respondent.

BROWN, Justice.

This is an original application by Nora Milner and Cleo Hayes to review the order

of the Circuit Court of Jefferson County, the Hon. Whit Windham, one of the judges of said court presiding, granting the defendant's motion to quash the service of the summons and complaint made by the sheriff of said county through his deputies, asserting that said order was erroneous and praying for the writ of mandamus to compel said circuit court to vacate same. On the filing of the original application duly verified by the oaths of the petitioners this court ordered the issuance of a rule nisi addressed to the Hon. Whit Windham as such Presiding Judge, commanding him to show cause why said order should not be vacated. Service of the rule nisi was accepted by the respondent and on January 13, 1948, he filed what he designated as "Answer of Whit Windham, Judge of the Circuit Court of the Tenth Judicial Circuit," which in its body recites, "Now comes Whit Windham, Judge of the Circuit Court Tenth Judicial Circuit, Birmingham, Alabama, and for answer to the petition filed in this case and to the rule nisi heretofore issued in this case says:" followed by admissions of certain paragraphs of the petition but denying others. Paragraph 4 of said answer states: "This respondent, in answering the paragraph marked 'fourth' of the petition, admits that, on the dates named in the several quoted portions in said paragraph 'fourth', returns were made of execution of process in said cause by the Sheriff of Jefferson County Alabama through and by Deputy Sheriff Logan and Deputy Sheriff Ingram, as shown and set forth in said paragraph in said petition. Whether any one of these purported executions of process on the defendant, Congress of Industrial Organizations, was and constituted due execution of the same on the said defendant was one of the questions being tried before the undersigned on the motion which is set forth and copied in paragraph 'seventh' of the petition; and this respondent does not admit that the process was executed on Congress of Industrial Organizations. The order of this respondent on said motion indicates the conclusion of this respondent that the said process had not been executed on said defendant. * * *."

In paragraph 6 the respondent deals with the acceptance of service by the attorney for defendants of date April 28, 1947, in respect to which counsel for defendants made statement indicating that such acceptance was not intended to embrace the Congress of Industrial Organizations— C.I.O. No action of the court was invoked with reference to this acceptance of service and none was had, but the court seems to have treated this acceptance of service as inadvertent and without intention of the attorney to bind the Congress of Industrial Organizations.

Taking as true the statement of counsel, we suggest the better practice would have been for counsel to have asked the court for leave to withdraw such acceptance and in the face of the undisputed statement of counsel in open court, this statement would have justified such action.

The answer or return to the rule nisi, as we shall treat it, in addition to what we have stated, reiterates the testimony of the witness Schultz as set out in the petition upon which the court acted in granting the rule nisi commanding the respondent to vacate the order quashing the service ·or show why it should not be vacated and attaches to his return the Constitution of the Retail, Wholesale and Department Store Union—C.I.O., the Constitution and By-Laws of The United Wholesale & Warehouse Employees Local Union 261— C.I.O. and doing business in Jefferson County, Alabama, and the Constitution of the Congress of Industrial Organizations —C.I.O.

In the 11th paragraph of the said answer and return it is pointed out that there was a clerical omission in the order of the court and a correction thereof.

While the procedural law in mandamus was not strictly observed in respondent's return, as pointed out in Gainer v. Board of Education of Jefferson County et al., Ala.Sup., 33 So.2d 880;[1] Board of Education of Jefferson County et al. v. State ex rel. Kuchins et al., 222 Ala. 70, 131 So. 239; Longshore, Judge, etc., v. State ex rel. Turner, 137 Ala. 636, 34 So. 684; Garrett v. Cobb, 199 Ala. 80, 74 So.

[1] Ante, p. 256.

*226*, we are treating the answer in this case as a return to the rule nisi.

The question of the liability of the parent organization for acts arising out of the local organization is not a question presented in this case. The sole question, which we now consider, is whether or not leaving a copy of the summons and complaint with Carey Haigler, Agent, and John J. Schultz, Agent, constitutes valid service of process under Article 8, Title 7, Code of 1940, embodying §§ 142 through 145, inclusive, was such service as meets the requirements of due process of law under the constitution of this state and of the 14th amendment of the Constitution of the United States.

Sections 142 and 143 confer on unincorporated organizations or associations the right to sue and be sued in the courts of this state for "any cause of action for or upon which the plaintiff therein may maintain such an action against the members of such organization or association."

Section 144, Title 7, Code of 1940, provides: "Service of process in such action against such organization or association shall be had by service upon any officer or official member of such organization or association or upon any officer or official member of any branch or local of such organization or association, provided that any such organization or association may file with the secretary of state a designated officer or agent upon whom service shall be had and his residence within the state, and if such designation is so made and filed, service of process shall be had only on the officer or agent so designated if he can be found within the state."

■ The defendant—Congress of Industrial Organizations—did not exercise the authority conferred on it of designating an agent upon whom service could be had. The statute is applicable to resident associations as well as nonresident associations, hence there is no discrimination against nonresident associations. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091.

■ The constitutional integrity of these statutes was sustained by this court in Grand International Brotherhood of Locomotive Engineers v. Green, 210 Ala. 496, 98 So. 569, and it is settled that the activities of such unincorporated organizations are subject to regulation under the police power of the state. Alabama State Federation of Labor et al. v. McAdory, 246 Ala. 1, 18 So.2d 810.

The undisputed evidence shows that Schultz was at the time of service Vice President of Retail, Wholesale and Department Store Union—C. I. O., an international union composed of local unions and affiliated with the Congress of Industrial Organizations—C. I. O. That the principal office of the Congress of Industrial Organizations is in Washington, D. C. That Haigler at the time of service on him was State Director for the C. I. O. Southern Organization Committee and at the time of said service on him was in the exercise of the purpose and practices of Organization Committee, said Haigler acting as State Director thereof. Said C. I. O. Organization Committee has its principal office in Atlanta, Georgia. Local 261 named in the sheriff's return is a C. I. O. Union, affiliated with the International Union, and pays a per capita tax to the international union C. I. O. of 50 cents per month per member. The initiation fee of Local 261 is $3, $1 of the initiation fee being paid into the International Union C. I. O. The Constitution of the Congress of Industrial Organizations adduced in evidence and made Exhibit "A" to the return recites inter alia in the preamble: "The Congress of Industrial Organizations grew out of the need of the unorganized workers of America which could be met most effectively by the industrial form of organization. Since its formation in 1935, the CIO has grown strong because the service it has given to American workers has made ours a better America. We of the CIO are the sons and daughters of ancestors who came to America to escape absolutism in government, bigotry in religion, and economic exploitation. We of the CIO are proud of this American quest for liberty and the struggle for equality. We seek, today, to implement this great heritage. We are dedicated ·to the responsibility for furthering economic opportuni-

ty, religious freedom, and political participation. * * *."

The Constitution of Congress of Industrial Organizations provides:

"Article I.

"Name

"This organization shall be known as the 'Congress of Industrial Organizations' (CIO).

"Article II.

"Objects

"The objects of the organization are:

"First. To bring about the effective organization of the working men and women of America regardless of race, creed, color, or nationality, and to unite them for common action into labor unions for their mutual aid and protection.

"Second. To extend the benefits of collective bargaining and to secure for the workers means to establish peaceful relations with their employers, by forming labor unions capable of dealing with modern aggregates of industry and finance.

"Third. To maintain determined adherence to obligations and responsibilities under collective bargaining and wage agreements.

"Fourth. To secure legislation safeguarding the economic security and social welfare of the workers of America, to protect and extend our democratic institutions and civil rights and liberties, and thus to perpetuate the cherished traditions of our democracy.

"Article III

"Affiliates.

"Section 1. The Organization shall be composed of *Affiliated National and International Unions, Organizing Committees, Local Industrial Unions and Industrial Union Councils.*—[Emphasis supplied.]

"Section 2. Certificates of affiliation shall be issued to national and international unions and organizing committees by the Executive Board.

"Sec. 3. Certificates of affiliation shall be issued to local industrial unions by the Executive Board. The Executive Board shall issue rules governing the conduct, activities, affairs, and the suspension and expulsion of local industrial unions. It shall be the duty of the Executive Board to combine local industrial unions into national or international unions or organizing committees. Any local industrial union or group of local industrial unions may request the Executive Board to authorize such combination. The decision of the Executive Board may be appealed to the convention, provided, however, that pending the appeal the decision shall remain in full force and effect.

"Sec. 4. Certificates of affiliation shall be issued to industrial union councils by the Executive Board, Industrial Union Councils shall be organized upon a city, state or other regional basis as may be deemed advisable by the Executive Board and shall be composed of the locals of national unions, international unions and organizing committees, and local industrial unions and local industrial union councils within the territorial limits of such council. It shall be the duty of national and international unions and organizing committees to direct their locals to affiliate with the proper industrial union councils. It shall be the duty of all local industrial unions and local industrial union councils to affiliate with the proper industrial union councils. The executive Board shall issue rules governing the conduct, activities, affairs, and the suspension and expulsion of industrial union councils. The decision of the Executive Board may be appealed to the convention, provided, however, that pending the appeal the decision shall remain in full force and effect.

"Sec. 5. The number of members in each national or international union, organizing committee, and local industrial committee, and local industrial union for any purpose under the constitution shall be the number of members for which per capita dues have been paid and the number of members for which exoneration has been granted by the Executive Board, pursuant to the constitution. It shall be the duty of each affiliate to furnish reports to the Organization showing its membership.

"Sec. 6. National or international unions and organizing committees may not be suspended or expelled except upon a two-

thirds vote at the convention. This provision may not be amended except by a two-thirds vote at the convention. * * *

"Article VIII.

"Revenue

"Section 1. Each national and international union and organizing committee shall pay on or before the 15th of each month, for the preceding month, a per capita tax of five cents per member per month.

"Sec. 2. Each local industrial union shall pay on the 15th of each month, for the preceding month, a per capita tax of fifty cents per member per month. The local industrial unions, shall also pay to the Organization one-half of the initiation fee received by such local industrial union from its members, which payment to the Organization shall in no case be less than $1. per member.

"Sec. 3. The Executive Board may exonerate any national or international union, organizing committee and local industrial union from the payment of per capita tax due to the Organization for any month for the members in good standing of such affiliate who are unemployed due to strike, lock-out or other involuntary cause.

"Sec. 4. Each affiliate, upon the issuance of a certificate of affiliation, shall pay to the Organization the sum of $25.

"Sec. 5. Each industrial union council shall pay to the Organization an annual fee of $25. * * *."

"The Constitution and By-Laws" of "The United Wholesale & Warehouse Employees Union Local 261 C. I. O." provides:

"The name of this organization shall be the United Wholesale & Warehouse Employees Union Local 261 C. I. O. affiliated with the United Retail Wholesale and Department Store Employees of America of the CIO.

"Declaration of Objects and Principles.

"Section 1.—(a) Local 261 reaffirms its devotion to the principles of industrial unionism as enunciated by the Congress of Industrial Organizations.

"The objectives of this organization are to unite into one organization regardless of race, creed, color, nationality or religion all workers employed in or about the wholesale and retail establishments. * * *

"Jurisdiction.

"Section 2—Local 261 shall affiliate with the United Retail Wholesale and Department Store Employees of America and shall have exclusive jurisdiction over all workers employed in or about the wholesale and retail industries in the State of Alabama.

"The membership shall be the supreme authority of this local and their decisions must be in consonance with the International Constitution of the United Retail, Wholesale and Department Store Employees of America. * * *

"Membership.

"Section 3—(a) Applicants for membership shall fill out the official application blank provided for that purpose and shall not be deemed a member until he has taken the member's oath of obligation. * * *."

The "oath of obligation" of the "United Wholesale & Warehouse Employees Union Local 261 C. I. O." follows:

"I, (name of member), do sincerely promise of my own free will, to abide by the laws of the Union, to bear true allegiance to, and keep inviolate the principles of the Congress of Industrial Organization, never to discriminate against a fellow worker on account of creed, color, or nationality, to defend freedom of thought, whether expressed by tongue or pen, to defend on all occasions and to the extent of my ability the members of our organization.

"That I will not, unless officially authorized reveal to any employer or boss the name of anyone a member of our Union. That I will assist all members of our organization to obtain the highest wages possible for their work; that I will not accept a brother's job who is idle for advancing the interests of the Union or seeking better remuneration for his labor; and as only by standing together can workers improve their lot, I promise to cease

work at any time I am called upon by the organization to do so. And I further promise to help and assist all brothers in adversity, and to have all eligible workers join the Union that we may all be able to enjoy the fruits of our labor, and that I will never knowingly wrong a brother or see him wronged, if I can prevent it.

"To all this I pledge my honor to observe and keep as long as life remains, *or until I am absolved by the Union of the Congress* of Industrial Organization."— [Italics supplied.]

It is clear from the foregoing that the purpose, object and design of the Congress of Industrial Organizations— C. I. O. is international in scope and purpose. That the dominant purpose of its existence is to organize into unions and locals the unorganized employees and workers in every field of industry and endeavor. That the organization is "composed of affiliate national and international unions, organizing committees, local industrial unions and industrial union councils." The supreme authority of said organization is vested by the constitution in its convention composed of delegates from the several organizations, when such convention is in session. When the convention is not in session, the powers of said organization are vested in the executive board, which has under its constitution, "The power to adopt such rules, not inconsistent with the constitution, as may be deemed necessary to carry out its duties and powers." That it was this business and purpose that said Haigler as State Director of the Southern Organization Committee was engaged in and exercising in Jefferson County, Alabama, at the time of service of process on him. That said Schultz at the time of service of process on him was the Vice President of the Retail, Wholesale and Department Store Union— C. I. O., an International Union Composed of Local Unions Affiliated with a constituent element of said Congress of Industrial Organizations—C. I. O.

The evidence shows that said Haigler and Schultz each received a copy of the summons and complaint which constituted the usual process issued out of the Circuit Court of Jefferson County in actions for "damages" and under the statute the defendants had thirty days within which to appear and plead. There is not only reasonable probability but practical moral certainty that the defendant, Congress of Industrial Organizations received actual notice of the pendency of the action, which apparently grew out of the business engaged in by said defendant in organizing and excluding workers within the jurisdiction of the Congress of Industrial Organizations—C. I. O. This clearly meets the requirements of due process under the constitutions, both state and federal. Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097; International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Grand International Brotherhood of Locomotive Engineers v. Green, 210 Ala. 496, 98 So. 569; International Printing Pressmen and Assistants' Union of North America v. L. R. Smith, 145 Tex. 399, 198 S.W.2d 729.

In the instant case it clearly appears from the statement of counsel that the defendant, Congress of Industrial Organizations—C. I. O., received notice of such service and instructed him to question the court's jurisdiction, which he did by his motion to quash service. We are, therefore, of opinion that the circuit court erred in granting the motion to quash, and unless the respondent is content to vacate that order upon being advised of this opinion, the peremptory writ of mandamus will issue.

Mandamus granted conditionally.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.