268 So.2d 22

**VISUAL EDUCATORS, INC., a corporation**

v.

**William KOEPPEL et al.**

**6 Div. 883.**

Supreme Court of Alabama.

Sept. 28, 1972.

Rehearing Denied Nov. 9, 1972.

---

Ferris S. Ritchey, Jr., Birmingham, Robert Eugene Smith, Towson, Md., D. Freeman Hutton, Atlanta, Ga., for appellant.

J. Wagner Finnell, Glenn N. Baxter, E. D. McDuffie, Tuscaloosa, for appellees.

**HEFLIN, Chief Justice.**

This case was assigned to another Justice on original submission. It has been reassigned to the writer for preparation of an opinion for the court.

This is an appeal from an order of the Circuit Court of Tuscaloosa County, Alabama, denying the appellant-petitioner Visual Educators, Inc.'s verified petition for a writ of mandamus requiring the appellees-respondents, William Koeppel, License Commissioner of the City of Tuscaloosa, Alabama, and C. Snow Hinton, James L. Chancy and Hilliard Fletcher, Commissioners of the City of Tuscaloosa, Alabama, to issue a license for the operation of a motion picture house within the corporate limits of the City of Tuscaloosa. The petition alleged that the petitioner (appellant) had applied for a license to the License Commissioner who denied the application and that the following day the petition was presented to the Board of Commissioners of the City of Tuscaloosa, who also denied the application. The petition also contained the appellant-petitioner's statement that it intended to show "adult only" motion pictures; that it had complied with all material parts of the licensing ordinance; and that the respondent's failure to issue said license amounted to a gross and palpable abuse of discretion.

Demurrers were filed by the appellees-respondents and were overruled by the court. On the same day an answer was filed on behalf of all appellee-respondents.

The answer, in essence, stated that the respondents had ascertained that the building wherein the appellant-petitioner proposed to conduct his business had a seating capacity of only 88 persons; that the city had several licensed theaters, none of which had a seating capacity of less than 326 people; that no legitimate theater of that size could exist except through the exhibiting of obscene movies; and that such obscene movies would appeal to prurient interest, would be utterly without redeeming social value or importance, would be patently offensive to prevailing or contemporary standards in the city and county of Tuscaloosa, and would go substantially beyond customary limits of candor in de-

scribing or representing such matters. The answer further recited that the Commission Board had determined that the proposed business of exhibiting sub-standard and pornographic material was not a useful and harmless business and that such business would be susceptible to debilitating influences and dissipating tendencies hurtful to public morals and, therefore, productive of disorder and injurious to the public. The answer further recited that the respondents had never licensed any theater to engage in the business of showing "adult only" or "X-rated" movies and adopted as a part of the answer a resolution which had been adopted on May 25, 1971. The answer further recited that the respondent-Commissioners of the City of Tuscaloosa had the responsibility of setting a policy and determining a course of action to promote public safety, peace, good, order and decency within the community, pursuant to the provisions of Section 751 of Title 37 of the Code of Alabama, 1940, and in exercise of that authority determined that the films which the petitioner intended to show were contrary to public safety, peace, good, order and decency and, therefore, refused the issuance of a license.

The said resolution of the City stated that the express purpose of the theater was to show motion pictures which depicted nudity, sexual conduct, or sadomasochistic abuse, as well as other matters, and that in the opinion of the Commission Board the public good or safety demanded that it refuse to license such theater.

At trial the testimony of William E. Koeppel, the License Commissioner, disclosed that he had no facts concerning the operation of the appellant-petitioner's motion picture theater except that it was to be a small, adults only theater. Mayor C. Snow Hinton testified that he and the other board members felt that showing "X-rated" movies and the by-products of such a theater as was proposed to be opened in Tuscaloosa was "contrary to the families

of [Tuscaloosa] . . .". He also stated that to show "lewd, immoral X-rated, adult movies" would be contrary to the standards of the community, and that he had determined that it would be "contrary to the safety, peace and good order and decency of [Tuscaloosa] to issue a license".

The city ordinance on which the License Commissioner and Board of Commissioners were acting is found in Title 37, § 751, and reads as follows:

> "Any city or town shall have the power to license, tax, regulate, restrain, or prohibit theatrical and other amusements . . . theatres, parks and other places of amusement, when in the opinion of the council the public good or safety demands it, to refuse to license any or all such business . . . ."

Appellant-petitioner, without challenging the ordinance as unconstitutional on its face, contends that the arbitrary and unfounded denial of a license to operate a moving picture theater on the conjecture, without proof, that it might exhibit obscene pictures, imposes a prior restraint on the freedom of expression in contravention of Article I, § 4 of the Alabama Constitution, as well as the First Amendment to the United States Constitution.

This court is, of course, bound by the federal constitution, including the commands of the First Amendment, which have been made obligatory as to the states through the Fourteenth Amendment. Because the federal constitution is controlling in the event of conflict with any state or city statute or ordinance, or any state constitutional provision, this court must consider the federal constitutional implications of this case.

■ This approach begins with the premise that "[A]ny system of prior restraints of expression . . . bears[s] a heavy presumption against its constitution-

al validity". Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584, 593. It is, of course, incumbent upon the censor to prove that the film in question is obscene. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.

■ The above mentioned presumption and burden of proof directives are indicative of the cautious eye with which the Supreme Court of the United States views any system of prior restraint. This attitude is fundamental because censorship in advance is frought with danger, for in attempting to prevent, in advance, the commission of acts unprotected by the Constitution, it will also prevent the lawful exercise of free speech on an erroneous finding in advance that the applicant intends to carry on unlawful speech. American Civil Liberties Union v. Board of Education, 55 Cal.2d 167, 10 Cal.Rptr. 647, 359 P.2d 45. It should also be noted that the protection afforded by the First Amendment does not turn upon the truth, popularity or social value of the ideas and beliefs which are offered. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

■■ Although the states, by virtue of their police power, may under certain circumstances and to a limited extent, regulate the exercise of freedom of expression, the power of the states to abridge freedom of speech is the exception rather than the rule, and the legislature can not, under the guise of police power, arbitrarily or unnecessarily interfere with the freedom of speech. Feiner v. People of State of New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155. Any law subjecting the exercise of freedom of speech to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional.

Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162; Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280.

■ This is not to say that the freedom of speech guaranteed by the First Amendment is absolute, even in the case of prior restraint, however, the limitations which may be imposed constitutionally are of an exceptional nature. Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357.

The test to be applied in ruling on the question of obscenity was first enunciated in Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498, 1509, as follows: "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest".

[6] Under the "Roth test", as refined and elaborated in subsequent decisions, three elements must be satisfied independently in order to find that the material in question is obscene. It must be established that: "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value". Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1. If any one or more of the above mentioned elements is found to be lacking the material can not be found to be obscene.

The case of *Memoirs* is illustrative of this point. The United States Supreme Court there stated, in essence, that a book could not be censored unless it is found to be utterly without redeeming social value, and this is so although the book may be found to possess the requisite prurient appeal and to be patently offensive. The so-

cial value of a book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness. Each of the three must be found to exist without reference to the presence or absence of either of the remaining two before censorship is valid.

It should also be noted that the "contemporary community standards" referred to in the "Roth test" are national in scope, rather than local or state standards. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793. *Jacobellis,* supra, also held that the "Roth test" was applicable to films as well as to printed publications.

The Supreme Court of the United States had occasion to consider a New York licensing ordinance in the case of Kingsley International Pictures Corp. v. Regents of University of State of New York, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512. The New York ordinance provided that a license should issue "unless such film or a part thereof is obscene, indecent, immoral, inhuman, sacrilegious, or is of such a character that its exhibition would tend to corrupt morals or incite to crime . . .". McKinney's New York Consol.Laws, 1953, c. 16, Education Law, § 122. The statute was amended prior to the trial of the *Kingsley* case in an effort to further define the term "immoral" and the phrase "of such a character that its exhibition would tend to corrupt morals". The amendment included within such terms " . . . a motion picture film . . . the dominant purpose or effect of which is erotic or pornographic; or which portrays acts of sexual immorality, perversion, or lewdness, or which expressly or impliedly presents such acts as desirable, acceptable or proper patterns of behavior". McKinney's New York Laws, 1953, (Cum. Supp.1958), Education Law, § 122–a.

The Appellant in that case, the distributor of the film "Lady Chatterley's Lover", submitted the film to the Motion Picture Division of the New York Education Department for a license. The Motion Pic-

ture Division, finding the film to be "immoral within the intent of our law", refused to issue a license. The statute was construed by the Court of Appeals of New York as requiring the denial of a license when the subject of the picture "is adultery presented as being right and desirable for certain people under certain circumstances". The United States Supreme Court held the New York statute, as it had been construed and applied, to be violative of the First Amendment.

It may be argued that the Supreme Court's decision in Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403, lends support to the Board's denial of a license to the appellant-petitioner. In that case the Supreme Court had occasion to review the constitutionality of a Chicago municipal ordinance which required submission of all motion pictures for examination or censorship prior to their exhibition, and forbade their exhibition unless they met certain standards. Municipal Code of Chicago, § 155–4. The petitioner in *Times Film* applied for a license to exhibit a certain motion picture and tendered the required license fee, but was denied a license solely because he refused to submit the film for examination. The Court stated the issue as "whether the ambit of constitutional protection includes complete and absolute freedom to exhibit, at least once, any and every kind of motion picture", The Court, while holding that the ordinance was not void on its face, did not reach the issue of the validity of the standards set out in the ordinance, because the petitioner had not attacked them, and, hence, they were not before the court. The Court did plainly state, however, that they were "not holding that city officials may be granted the power to prevent the showing of any motion picture they deem unworthy of a license".

In Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649, the United States Supreme Court limited the application of *Times Film* to cases where the issue is whether a prior restraint was neces-

sarily unconstitutional under all circumstances. In *Freedman* the appellant had been convicted of exhibiting a motion picture without prior submission to the Maryland State Board of Censors for approval. The Maryland Court of Appeals held, on the authority of *Times Film,* that the Maryland censorship law had not run afoul of the First Amendment. The Supreme Court of the United States, in reversing the Maryland court, said:

> "This reliance on *Times Films* was misplaced. The only question tendered for decision in that case was 'whether a prior restraint was necessarily unconstitutional *under all circumstances*' ".

The United States Supreme Court went on to admonish all courts that "[any] process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system".

As was stated at the outset, the appellant-petitioner does not challenge the constitutionality of the statute on its face, it merely contends that the statute has been construed and applied in this instance in such an arbitrary manner as to violate its constitutional rights under the First Amendment. Hence, the constitutionality of the statute per se or of a system of prior restraints is not before this court and, therefore, no opinion is expressed as to those issues.

In determining whether the statute (Title 37, Section 751, supra) has been construed and applied in this instant case in such an arbitrary manner as to violate the appellant-petitioner's constitutional rights, it must be decided who had the burden of proof. The issue thus presented may be stated as follows: Where a petition for a writ of mandamus is filed and the respondent, having waived issuance of an alternative writ or a rule nisi, makes no return but files an answer to the petition, is the burden of proof on the petitioner?

It should be noted at the outset that although certain United States Supreme Court cases, cited supra, have stated that the burden is on the governmental agency to show that a particular film is obscene, or that any system of prior restraints bears a heavy presumption against its constitutional validity, the instant case does not involve an attack on a particular film or a system of prior restraints. No United States Supreme Court decision controlling on the procedural circumstances presented by the instant case has been found by this court or cited by the parties. Thus, the Alabama procedural rules are controlling and this court is bound to follow them.

The trial court answered the above question in the affirmative, and that holding is due to be affirmed. Title 7, § 1073 of the Alabama Code, 1940, Recompiled 1958, provides that " . . . the return or answer shall not be conclusive, but the truth or sufficiency thereof may be put in issue and controverted". This provision has been held to mean that where the petitioner, in mandamus proceedings, joins issue on return, the issues are limited to the sufficiency and truth of the return, with the burden on the petitioner to show through competent evidence the insufficiency or untruthfulness of the matter alleged in the return. Wilson v. Brown, 241 Ala. 178, 1 So.2d 914 (1941); Pillans v. Johnson, 262 Ala. 689, 81 So.2d 365 (1955); Ex parte Smith, 252 Ala. 415, 41 So.2d 570 (1949). Where the burden is not met the matters averred in the return are taken as true. Ex parte Loyd, 275 Ala. 416, 155 So.2d 519 (1963). Although some of the cases cited above were decided prior to the present Code, this does not alter the applicability or weight of those cases because Section 8979 of the 1923 Code, the forerunner of Title 7, Section 1073, is identical to the present statutory provision.

It may be argued that because there was no return in the instant case, but only an answer, cases holding that where the petitioner joins issue on return the burden is on him, are inapplicable and, hence, not controlling in this case. While it is true that the respondent waived issuance of the alternative writ or rule nisi and filed an answer to the petition, this does not place the burden anywhere other than where it would otherwise be. Ex parte Curl, 280 Ala. 571, 196 So.2d 688 (1967); Ex parte Milner, 250 Ala. 511, 35 So.2d 169 (1948).

In *Ex parte Curl*, the petitioner, L. D. Curl, filed a petition for mandamus seeking review of a previous order transferring the cause from the law to the equity side of the court. The respondent judge filed an answer, thus waiving issuance of the rule nisi. This court, in holding that the answer was insufficient and granting the writ, treated the answer, where the respondent had waived the rule nisi, the same as it would have been treated had the rule issued, stating that if the answer to a rule nisi is sufficient, the writ of mandamus would be denied, and, if insufficient, it would be granted.

Hence, where the respondent waives issuance of the rule nisi and files an answer to the petition, the answer will be treated as a return to the rule nisi; and where issue is joined on the return the burden is on the petitioner. The burden of proof was, thus, on the petitioner in the instant case.

The appellant-petitioner cites four cases in support of its contention that the trial court erred in placing the burden of proof on him. Gainer v. Board of Education of Jefferson County, 250 Ala. 256, 33 So.2d 880 (1948); Board of Education of Jefferson County v. State ex rel. Kuchins, 222 Ala. 70, 131 So. 239 (1930); Longshore v. State ex rel. Turner, 137 Ala. 636, 34 So. 684 (1902); Garrett v. Cobb, 199 Ala. 80, 74 So. 226 (1916). This court finds none of these cases dispositive of the issue presented, however, because *Gainer* is most nearly in point, further discussion is in order.

The petitioner in *Gainer*, filed a petition for a writ of mandamus seeking restoration of her former position as a teacher.

Having shown, through her petition, a prima facie right to relief, an alternative writ was issued to respondent, Board of Education of Jefferson County, commanding the board to restore petitioner to her rights as a teacher or show cause why she should not be so restored. The respondent's demurrer to the petition was overruled and an answer was filed by the respondent without filing a return to the writ. That case went off on the point that the answer filed by the respondent was insufficient and the petition showed on its face a prima facie right to relief. That case did not hold the burden of proof was on the respondent, but merely that the peremptory writ will be granted where the respondent fails to sufficiently answer the petition.

■ Having determined that the burden of proof was on the appellant-petitioner, the question becomes: Did the appellant-petitioner, through competent evidence, show the insufficiency or untruthfulness of the matters alleged in the answer.

In the case under review, the appellant-petitioner called only two witnesses, Mr. William Koeppel, the License Commissioner, and Mayor C. Snow Hinton, Chairman of the Board of Commissioners for the City of Tuscaloosa. The testimony of Mr. Koeppel has been referred to previously, as has that of Mayor Hinton. It is clear from the answer and the testimony that appellant-petitioner intended to show "X-rated adult only movies" and this was the reason for the denial of the license. There was no testimony at all about what type of movies are included within the term "X-rated". Neither was there any evidence as to what individual, group of individuals or organization or organizations were going to rate the movies or what standards were to be used in the rating process. This court does not know the definition, restrictions, or boundaries of a rating given the designation of "X", and, therefore, can not judicially notice that such films with an "X" rating do or do not meet the standards of *Roth, Memoirs* and other decisions of the United States Supreme Court. Likewise, this court can not judicially notice whether such films are harmful or unharmful to public safety or good.

No filmed exhibits were displayed to the trial court and there are none on appeal for this court to examine, hence, this court can not possibly rule on whether the films to be shown were obscene or not obscene or harmful or not harmful to public safety or good. This court can not, with any degree of certainty, hazard a guess as to whether the "public good or safety" required that the license to show such films be denied.

In this regard the instant case is inapposite to the United States Supreme Court cases cited previously, in that those cases dealt with the granting or denial of a license to show one particular picture or with attacks on a system of prior restraints. The instant case, on the other hand, concerns the denial of a license to operate a theater. There was a complete lack of evidence for this court to make a determination of whether there was an arbitrary and unfounded denial of the license to operate the theater. In the absence of such evidence this court has no alternative but to accept the answer to the petition for mandamus as being correct, including the statement that the issuance of the license would be contrary to "public good or safety".

In light of the foregoing this court can not say that the appellant-petitioner has carried its burden of proof, hence, the lower court must be affirmed.

Affirmed.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX, McCALL, and SOMERVILLE, JJ., concur.